## COURT OF APPEALS.

January 4, 1910.

## THE PEOPLE v. LINGI GAMBACORTA.

(197 N. Y. 181.)

**(1). MURDER—CONVICTION SUSTAINED.**

The evidence upon the trial of a defendant indicted for the crime of murder examined, and *held*, amply sufficient to sustain a verdict convicting the defendant of the crime charged.

**(2). SAME—NEW TRIAL—EVIDENCE OF INSANITY.**

Proof that the parents and relatives of a defendant, charged with the crime of murder, were mentally disordered or even insane is not by itself evidence of the insanity of the defendant. If there is evidence of personal manifestations of the insanity of a person, proof of hereditary tendency may be received as supporting such primary evidence.

**(3). SAME—EPILEPSY.**

Epilepsy, even if well proved, does not necessarily establish that a person afflicted with it is so mentally disordered as to be at all times free from responsibility for his acts.

**(4). SAME—AFFIDAVITS ON MOTION FOR NEW TRIAL.**

While opposing affidavits on a motion for a new trial made by a defendant convicted of murder, upon the ground of newly-discovered evidence, should not be weighed with the same exactness or closeness which a jury should apply to the evidence outlined therein if finally produced on a trial, still some attention must be given to this feature of such a motion for the purpose of determining whether it should prevail.

**(5). SAME.**

Where the affidavits produced on such motion for the purpose of showing that defendant was an epileptic and mentally irresponsible were made by acquaintances, friends and relatives of the defendant, mostly in a foreign country and beyond the reach of punishment, if they have sworn falsely, and the affidavits of disinterested affiants living within the jurisdiction of the court, some of whom are medical examiners in lunacy, indicate the absence of epilepsy and other physi-

cal and mental disorders alleged for the defendant, and no person within the jurisdiction of the court, with the exception of one friend, contradicts these affidavits by allegations of any conspicuous indication of epilepsy since the defendant came to this country, about eight months before the commission of the crime for which he was convicted, it must be held that the defendant has failed by his affidavits to establish any presumption whatever that the result of a new trial would be different if all the new evidence were produced.

APPEAL from a judgment of the Supreme Court rendered January 16, 1908, at a Trial Term for the county of Erie, upon a verdict convicting the defendant of the crime of murder in the first degree and from an order denying a motion for a new trial.

The facts, so far as material, are stated in the opinion. ·

*Myron M. Ludlow, Jr.,* for appellant. The People failed to establish a case of murder in the first degree beyond a reasonable doubt. (*Stokes v. People,* 53 N. Y. 164; *People v. White,* 24 Wend. 520; Penal Law, § 1044; *People v. Barberi,* 149 N. Y. 256; *People v. Barber,* 115 N. Y. 475). Owing to the fact that the defense tended to prove that the defendant had on a number of occasions acted peculiarly, sufficient to have the acts characterized by certain witnesses as irrational, the absence of motive becomes very important and the attention of the jury should have been called to that fact by the court in considering the presence of premeditation and deliberation. (*People v. Dinser,* 192 N. Y. 80; *People v. Osmond,* 138 N. Y. 80; *People v. Southerland,* 154 N. Y. 345; *People v. Kennedy,* 159 N. Y. 346; *People v. Benham,* 160 N. Y. 402; *People v. Jones,* 99 N. Y. 667; *McKee v. People,* 36 N. Y. 113; *Hendrickson v. People,* 10 N. Y. 13; *People v. Place,* 157 N. Y. 584; *People v. Barberi,* 149 N. Y. 256). The court erred in allowing the witness Dominick Lalla to be sworn and testify. (Code Crim. Pro. §. 392; *People v. Johnson,* 185 N. Y. 219;

*People v. Donahue,* 114 App. Div. 832; *People v. Grallenzo,* 54 App. Div. 360; *Wheeler v. U. S.,* 159 U. S. 523). There was misconduct on the part of the prosecuting attorney in his opening, stating a motive which was not substantiated, in his effort to place certain testimony before the jury relative to a former arrest and conviction of the defendant, and in his summing up making certain statements of fact which were not substantiated by the evidence, all of which was irrelevant, improper, prejudicial to the rights of the defendant, and constituted reversible error. (23 Am. & Eng. Ency. of Law [2d ed.], 276; *People v. Smith,* 162 N. Y. 520; *People v. Milks,* 55 App. Div. 372; *State v. Williams,* 63 Iowa, 135; *People v. Bissert,* 71 App. Div. 118; *People v. Davey,* 179 N. Y. 345; *People v. Ray,* 36 App. Div. 389; *People v. Corey,* 157 N. Y. 332; *People v. Fielding,* 158 N. Y. 542; *People v. Hill,* 37 App. Div. 327; *Swan v. Keough,* 35 App. Div. 80). The new evidence which it is shown the defendant can produce, if received on the trial, would probably have changed the verdict. (Penal Law, § 1120; *People v. Barber,* 115 N. Y. 475; *People v. Lane,* 31 Hun, 13; *People v. Burgess,* 153 N. Y. 561; *People v. Koerner,* 154 N. Y. 355; *People v. Furlong,* 187 N. Y. 198; *People v. Wood,* 126 N. Y. 259; *People v. Egnor,* 175. N. Y. 419).

*Wesley C. Dudley* and *Guy P. Moore* for respondent. The evidence on the trial sustained the charge in the indictment and justified the verdict of the jury. (*People v. Ferraro,* 161 N. Y. 365). Upon the trial of an indictment for murder the question of motive is unimportant when the evidence points unmistakably to the fact that the act was committed by the defendant. (*People v. Ferraro,* 161 N. Y. 365). No error occurred in allowing the boy Dominick Lalla to give his testimony under oath. (*People v. Johnson,* 185 N. Y. 219).

HISCOCK, J.:

There is no question that early in the morning of November 20, 1907, while they were walking by themselves in one of the streets of Buffalo, the defendant stabbed and killed one Rae-monde Femmenino, who was his cousin. The men were seen to be engaged in a brief struggle, in which the defendant stabbed the deceased and after which he ran away and attempted to hide. The deceased was found with four stabs, two in the breast and two in the back, and immediately died. There was found near him the knife with which the stabbing was done.

There is no evidence of any motive for the killing antedating the occasion when it occurred and only slight evidence of some demand for bread or money immediately preceding and appearing to lead up to the stabbing. The jury, however, were justified in determining that the deceased was not the aggressor in any quarrel; that the defendant the day before the homicide had stolen the knife with which it was committed, and that without any disclosed reason of a legitimate nature he sought the deceased on the morning in question at his boarding place and apparently went with him for some distance to the point where the killing occurred. From these facts and from the undisputed evidence of the number, depth, position and character of the wounds and of the flight and attempted concealment of the defendant and from the lack of evidence of any weapon in the possession of the deceased, or of wounds upon the body of the defendant, the jury were fully warranted in finding that the defendant did not kill in justifiable self defense or in an unpremediated burst of anger, but that he had considered, prepared, sought an occasion for and, with determination and continuing purpose, accomplished the death of the deceased. The weight of the evidence fairly favors this conclusion, and it would be only by the substitution of conjecture for testimony that we could hold that the jury should have reached any other result than they did.

It is, however, urged that various errors were involved in the trial which may have influenced the jury to the prejudice of the defendant, and that, therefore, he should have a new trial. These faults are alleged to have been committed by the district attorney in certain remarks made in opening and summing up the case, and by the trial judge in the admission of certain evidence and in administering an oath to a proposed witness of the age of nine years. While some of the questions which have been discussed by the counsel for the defendant were not raised by exceptions at the time, we have disregarded this in their present consideration and all of them have received the careful attention to which they were entitled. None of them involve doubtful or obscure principles of law. Each one involves the query whether plain and well-understood principles were applied to the conduct of the trial. Under these circumstances it does not seem useful to discuss them separately or at length, but on the other hand to be sufficient to say that after full consideration we do not think that any errors even of a technical nature were committed, and, furthermore, that if we should assume that any such error was committed, it was so fully cured and obviated that no possible impairment of defendant's rights could have accrued therefrom.

The appeal which has presented more substantial questions is the one from the order denying the motion made for a new trial upon the ground of newly-discovered evidence that defendant was mentally irresponsible at the time of the homicide, and while a careful analysis of all of the affidavits and evidence produced upon the hearing of that motion in the light of the evidence already given on the trial leaves no reasonable doubt in my mind that it was properly denied, still a somewhat detailed discussion of the motion is justified if not required.

The defendant came to this country from Sicily about eight months before the homicide and at the latter time was about

twenty-three years of age. He was an ordinary laborer and undoubtedly ignorant and of a low mental order. When he was placed on trial, in addition to his general plea of not guilty, he pleaded insanity, and on the trial evidence was given for and against him on the issue thus presented. The evidence in his favor consisted of testimony by laymen largely of his general class, to the effect that at various times and with one or two exceptions, while in this country, he had done things which it was claimed indicated that he was of a disordered mind, but which did not at all establish that he was an epileptic, as afterwards on this motion claimed. On the other side, the People produced evidence tending to show that at the time of the homicide and trial he was in a normal condition mentally and fully responsible for his acts. The trial judge submitted the issue of his sanity and responsibility to the jury in a charge which was eminently fair and sufficiently comprehensive, and really no complaint is made on this appeal that their verdict against the defendant on this issue was not fully justified.

The motion for a new trial was made some fifteen months after the trial and the general claim was that evidence had been discovered in the meantime which so indicated that the defendant was affected with epilepsy and a tendency to mental disorder and not responsible for his acts at the time of the homicide that the jury could not well repeat the previous verdict if there should be a new trial. I shall assume that the evidence outlined on the motion was not cumulative and that there was no laches on the part of the defendant's attorneys. In fact I think it is very apparent that the latter under disadvantageous circumstances have labored faithfully and efficiently for their client and that no fault of theirs stood in the way of granting the motion if it otherwise had been well made.

The evidence outlined in the affidavits produced in support of the motion may be generally divided into three classes, as follows:

(1) To the effect that the defendant's father at times evinced an abnormal and violent disposition which tended in the direction of melancholia, and that the mother also was of an unusual disposition with nervous tendencies; that of the defendant's collateral relatives, a paternal uncle, his cousin the deceased, and two or three more distant relatives had been insane, some of them being actually confined for insanity.

(2) To the effect that the defendant before coming to this country (with one exception) had been subject to various spells, so-called fits and convulsions and other manifestations witnessed by laymen, from which might be inferred a disordered and epleptic condition, and that he had in fact been treated by various doctors for epilepsy, so-called.

(3) The evidence of Doctors Krauss and O'Donnell, state examiners in lunacy, who, called as experts, expressed the opinion, based on all of the facts above outlined and on the assumption that the seizures or fits were of a truly epileptic character rather than merely hysterical and also that there had been no change in his condition, that the defendant at the time of the homicide was not rational and responsible for his conduct.

It may be stated in general terms that the foundation for expected proof of the facts outlined in the first two classes of evidence largely consisted of affidavits of persons in Sicily and, with the exception of two or three doctors, the persons making such affidavits apparently belonged to about the same class of people as the defendant and were his relatives, friends or acquaintances. The expressions used in the affidavits of some of the laymen sufficiently indicate the adoption of terms and phrases which were supplied and framed by others than the affiants.

In opposition to these affidavits there were produced the affidavits of several people indicating that the defendant dur-

ing the period commencing immediately after the trial and extending down to the time when these affidavits were made gave no indication of being an epileptic or otherwise mentally disordered. Those who made such affidavits were keepers and the physician at the prison where the defendant was confined after his trial, and these affidavits as the result in the aggregate of long and constant observation testified to the absence of any sign whatever of any such disease or condition as was outlined by the affidavits in his behalf on this motion. In addition, the People caused to be produced and orally examined at length Drs. Krauss and O'Donnell, originally sworn in behalf of defendant, and these gentlemen not only testified that neither at about the time of the trial, as the result of several examinations of him, did they observe any sign that defendant was an epileptic or mentally disordered or otherwise than responsible, but further that even if the testimony in regard to his condition before coming to this country was true and thereafter he had been free from epileptic seizures as evidenced by the People's affidavits, they would not be willing on a new trial to express the opinion that at the time of the homicide he was epileptic and irresponsible.

While we should not weigh the opposing affidavits on a motion of this kind with the same exactness or closeness which a jury should apply to the evidence outlined therein if finally produced on a trial, still we must give some attention to this feature of the motion for the purpose of determining whether it should prevail. When we do this in the present instance it is apparent that affidavits made by acquaintances, friends and relatives of the defendant mostly in a foreign country and beyond the reach of punishment if they have sworn falsely are not of the same apparent weight and character as the affidavits produced on behalf of the People and made by affiants who, not only appear to have no personal interest in this case, but who

are within the jurisdiction of the court and subject to its punishment. The affidavits of the latter indicate an absence of any such physical and mental complaints as are alleged for the defendant, and no person, with the exception of one friend, contradicts these affidavits by allegations on this motion of any conspicuous indication of epilepsy since the defendant came to this country.

But aside from these considerations, there are others which almost conclusively require that this motion should be denied.

If we assume that the defendant's parents and relatives were mentally disordered or even insane, these facts are not by themselves evidence of the insanity of the defendant. If there is evidence of personal manifestations of the insanity of a person, proof of hereditary tendency may be received as supporting such primary evidence. (*Pringle v. Burroughs*, 185 N. Y. 375).

Epilepsy, which is the disease almost exclusively pointed at by the defendant's affidavits, if well proved, does not necessarily establish that a person afflicted with it is so mentally disordered as to be at all times free from responsibility for his acts. In fact it is a matter of common knowledge and observation that many persons who are subject to epilepsy regularly and successfully transact business and engage in other transactions requiring a sound mind. Such disease may be accompanied by or result in a mental condition exonerating the subject from responsibility. It may appear with or be so long continued and severe as finally to result in a condition of idiocy, or it may manifest itself in those violent attacks wherein the subject irrationally and irresponsibly may assault another.

There is no claim and no evidence that the first phase of the disease had overtaken the defendant. He was a young man apparently of good physical vigor, and while some of his witnesses have characterized his mind as of a low order, no one of them has claimed that he had sunk into a condition of idiocy.

So far as the violent manifestation of the disease is con-

cerned, it appears that the victim of one of these fits manifests a prostrated and dazed condition lasting some few minutes when beginning to recover therefrom. There is not alone an utter absence of any evidence to show these characteristics in the case of defendant on the occasion of the homicide, but the testimony absolutely rebuts any idea of their existence. If any credence whatever is to be given to the evidence of disinterested witnesses, it is established beyond any question that immediately upon stabbing the deceased the defendant fled and with the police officer and others in pursuit continued his flight for a thousand or eleven hundred feet and finally attempted to hide himself; that when finally apprehended, while compelling his captors to half drag him away he showed no signs whatever which are recognized as accompanying a recovery from an epileptic fit, and during two or three days which followed his apprehension he showed no such symptoms.

Under all of these circumstances and of others not specifically referred to, I think that the defendant has failed by his affidavits on the motion for a new trial to establish any presumption whatever that the result of a new trial would be different if all of the new evidence were produced. We must assume that the jury on such trial would scrutinize the evidence outlined by these affidavits carefully and analytically, and that they would not be led away by generalities or mere conclusions. Doing this, I believe that they could not find that the weight of evidence supported defendant's defense of insanity at the time of the homicide, and that consequently they would be compelled to repeat the verdict which has already been given.

The order denying the motion for a new trial, therefore, as well as the judgment of conviction, should be affirmed.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment accordingly.