# Commonwealth *v.* Dale, Appellant.

*Criminal law—Murder—Insanity—Evidence — Burden of proof
—Hereditary insanity.*

1. Where the defense in a murder trial is insanity, the burden is
on the defendant to prove by a fair preponderance of the evidence
that he was insane when he did the killing. This burden rests on
him throughout the trial, and he is required not only to adduce
evidence as to his own insanity, but also such corroborating proof
as he desires to submit.

2. The father of a defendant indicted for murder who has set up
insanity as a defense, will not be permitted to testify to his own
insanity, or such acts from which insanity might be inferred.

3. Where the insanity of an individual is in question the in-
sanity of his blood relations in the ancestral line, either direct or
collateral, may be shown in corroboration of the evidence showing
insanity in the individual; but hereditary insanity of itself is not
independent proof of the insanity of the prisoner, but it is circum-
stantial evidence used to corroborate other more direct proof of
insanity in the accused; of itself it cannot be used as a defense.

4. Before receiving such evidence as grounds for a presumption
of possible insanity, there must be some evidence showing insanity
in the accused. It must also appear that the disease is hereditary
or transmissible so as to taint the family blood.

5. If insanity is shown in the accused, and insanity be shown in
collateral kindred of not too remote a degree, and the insanity with
which each suffers is transmissible or hereditary in that it may or
will reappear in some form or symptom in a descendant, no matter
what symptom it may take in the descendant, such evidence may
be introduced without showing insanity in the direct line, i. e.,
parents or grandparents.

6. Witnesses who testify to insanity in the ancestors either direct
or collateral, must do so from personal knowledge and observation,
and not from reputation.

7. Before evidence to establish hereditary taint may be intro-
duced, proof should be present that the insanity in the collateral
kinsman was transmissible, and not nonhereditary.

8. On the trial of an indictment for murder where the defense is
insanity, the father of the accused cannot show that he had two
other children who had been committed to an insane asylum, that a
sister of the accused's mother was of unsound mind, and children
of the mother's brother were of unsound mind, where there is no

offer to prove that the insanity in such collateral kinsmen was transmissible.

Argued Feb. 17, 1919.  Appeal, No. 249, Jan. T., 1919, by defendant, from judgment of O. & T. Schuylkill Co., March T., 1918, No. 158, on verdict of guilty of murder of the first degree in case of Commonwealth v. Alexander Dale.  Before BROWN, C. J., STEWART, MOSCHZISKER, WALLING and KEPHART, JJ.  Affirmed.

Indictment for murder.  Before BECHTEL, P. J.

At the trial when Samuel Dale, the father of the accused, and a witness on his behalf, was on the stand, the following offers were made:

Defendant's witness, Samuel Dale, being on the stand, the following offer and ruling occurred:

Mr. Leuschner (at side bar):  We propose to prove by the witness that he himself has strange impulses; he suffers extremely from headaches and other affections of the head; that he has been that way from birth; that he feels coming on to him at times an impulse and a desire to kill; that he has often obtained a revolver when these impulses came upon him and he was seized with a determination to kill his wife; that, however, he has been able to control these impulses and put away the instrument with which he wanted to kill; that there is a taint of insanity in his family, especially his children; that one of his daughters was committed to the insane asylum at Danville, in this State, where she died; that one of his sons was committed to the insane hospital at Rittersville and subsequently released; and this will be supported by testimony from these institutions; that there is a taint of insanity in the family of his wife; that her nephew's children of her brother, William Gibson, are insane in a mild form, being grown children, and foolish.  For the purpose of showing the hereditary strain of insanity in the family.  This is to be followed by the testimony of an expert who will testify that this defendant has been, was and is now even at the time of this trial, insane and liable

at any moment to commit acts of violence which endanger the lives of the people.

Mr. Whitehouse: Objected to as being irrelevant, incompetent and immaterial, calling for an opinion from this witness, in the form in which the offer now stands.

The Court: I do not think we have sufficient evidence at the present time to admit the evidence as to his brother or his sister. If, later on, more evidence is introduced, that may become material, and counsel can again make that offer if they see fit to do so later on in the case. As to the evidence proposed to be introduced from the witness relative to his own condition, we will sustain the objection.

Defendant excepts. Bill sealed. (4)

Defendant's witness, Dr. Wm. H. Clewell, being on the stand, the following offer and ruling occurred:

Mr. Leuschner (at side bar): I desire at this time to renew the former offer made to show by Samuel Dale, the father of this defendant, that he has had from time to time strange impulses, impelling him to commit violent acts; that he has on more than one occasion armed himself with a revolver for the purpose of carrying these acts into effect. That these impulses were known to him, he was conscious of them, but that seemingly he had lost control of his will, although before the commission of any overt act he was able to regain control and no such act was committed; that by Samuel Dale, it is proposed to prove that he had two children, Anna Dale and John Dale, both of whom showed symptoms of insanity, and that Anna Dale was committed to the insane asylum at Danville, where she died, and that John Dale, another son of Samuel Dale, and a brother of the defendant, was committed to the insane asylum at Rittersville, in this State. This is to be corroborated by the testimony of Doctors Clewell, of Coaldale, and Ruch, of Lansford, Pennsylvania, Dr. Clewell being now on the stand for that purpose; the said Dr. Clewell and Dr. Ruch being the physicians who had the case of John Dale under consideration and were treating him at the time, and who prepared the

information and the papers to ultimately commit him to that institution. It is further proposed to corroborate the testimony of Samuel Dale, the father of this defendant, to the effect that he was in the habit of performing peculiar acts and that those in immediate contact with him believed him at such times to be of unsound mind. This for the purpose of showing that there exists in the family of Samuel Dale, a direct ancestor of this defendant, and collaterally that the sister and the brother of the defendant were insane, and that there exists in the family an hereditary tendency to insanity.

It is also proposed to prove that Agnes Kane, a sister of Elizabeth Dale, the mother of the defendant, was and is of unsound mind and that children of Wm. Gibson, a brother of Mrs. Elizabeth Dale, are also of unsound mind. This for the purpose stated in the offer above.

Mr. Whitehouse: It is objected to in the form it now stands as being irrelevant, incompetent and immaterial.

The Court: I do not think the evidence offered to prove the insanity of the father of the defendant is competent, and we do not think that he can prove his own insanity, and it is not proposed to show by any witnesses that he is now or ever was insane; neither is it proposed to show that the mother of the defendant is now or ever was insane. We think it would be necessary to show the strain of insanity in the blood of some ancestor of the defendant before the collateral issue can be proven. We do not think that it is competent to establish the main issue by collateral evidence. That must be established first. We therefore sustain the objection. The court has not ruled out or is not ruling out now any expert evidence offered to show the mental condition of the defendant at the time of the commission of this crime or at the present time.

Defendant excepts. Bill sealed. (5)

Verdict of guilty of murder of the first degree upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were (4, 5) rulings on evidence quoting the bills of exceptions.

*W. B. Durkin* and *E. P. Leuschner,* for appellant.

*C. A. Whitehouse,* District Attorney, with him *M. F. Duffy,* Asst. District Attorney, and *John J. Morgan,* for appellee.

OPINION BY MR. JUSTICE KEPHART, April 21, 1919:

The defense of the accused was insanity and the burden was on him to prove, by fair preponderance of the evidence, that he was insane when he killed Swartz. This burden rested on him throughout the trial and he was required not only to adduce evidence as to his own insanity, but also such corroborating proofs as he desired to submit. He proposed (a) to show, by his father, that he, the father, was of a nervous temperament, excitable and eccentric; or, in other words, the witness was called upon to prove his own insanity; (b) to show, by the same witness, that he had two children who had been committed to insane asylums, that a sister of the accused's mother was of unsound mind, and children of the mother's brother are of unsound mind. This for the purpose of showing "an hereditary tendency to insanity."

For obvious reasons, under the circumstances of this case, the witness should not be permitted to testify to his own insanity, or such acts from which insanity might be inferred. It would open the door to a very wide field into which much fraud, dishonesty and perjury may creep, to say nothing of the ability of the witness to judge of the matter: O'Connell v. Beecher et al., 47 N. Y. S. 334, 21 N. Y. App. Div. 298.

As to the second proposition, it was once ruled that it was not permissible to prove, either in criminal or civil cases, that other members of the same family have been decidedly insane: People v. Garbutt, 17 Mich. 9, 17, 97 Am. Dec. 162; A. & E. Encyc. of Law, Vol. 16, p. 613;

but that rule no longer obtains, as science teaches "that insanity of some varieties may be and even tends to be transmitted to descendants, is [now] an accepted pathological fact. Moreover, since it is equally true that it may pass over a generation or an individual before reappearing, it follows that insanity in collateral relatives may indicate an anterior ancestral tendency capable of appearing in other collateral branches": Wigmore on Evidence, Vol. 1, sec. 232, p. 288; and the general rule is, where the insanity of an individual is in question, the insanity of his blood relations in the ancestral line, either direct or collateral, may be shown in corroboration of the evidence showing insanity in the individual: In re Myer's Will, 184 N. Y. 54; Walsh v. People, 88 N. Y. 458; Commonwealth v. Winnemore, 1 Brewster 356; People v. Garbutt, supra; Prentis v. Bates, 88 Mich. 567; 93 Mich. 234; State v. Windsor, 5 Harr. (Del.) 512; Murphy .v. Commonwealth, 92 Ky. 485; Watts v. The State, 99 Md. 30. Owing to the great abuse that has been made by the use of insanity as a defense in criminal prosecutions, or as a reason for setting aside instruments in writing—wills, contracts and deeds—and the possibility of a trial being clogged with endless collateral issues, the courts have been compelled to impose limitations on the admissibility of evidence showing a taint of insanity in direct or collateral kinsmen.

Therefore, it has been ruled that hereditary insanity of itself is not independent proof of the insanity of the prisoner, but it is circumstantial evidence used to corroborate other more direct proof of insanity in the accused. Of itself it cannot be used as a defense: 1 Wharton & Stille's Medical Jurisprudence; People v. Gambacorta, 197 N. Y. 181; Wigmore on Evidence, Vol. 1, sec. 232; State v. Cunningham, 72 N. Car. 469, 474; Guiteau's Case, 10 Fed. 161.

Before receiving such evidence as grounds for a presumption of possible insanity, there must be some evidence showing insanity in the accused: Laros v. Com-

monwealth, 84 Pa. 200; People v. Gambacorta, supra; Bradley v. The State, 31 Ind. 492; Berry v. Safe Deposit, etc., Co., 96 Md. 45, 65; 53 Atl. 720; and authorities above enumerated.

It must also appear that the disease is hereditary, or transmissible, so as to taint the family blood: Walsh v. People, supra; Reichenbach v. Ruddach, 127 Pa. 564; State v. Van Tassel, 103 Iowa 11; 72 N. W. Rep. 497; In re Myer's Will, supra.

This last proposition is not entirely free from doubt in some states, and, though the insanity may be transmissible, the line in which it must appear is a little uncertain. The court below declined to receive the evidence because there was no proof of insanity in the direct ancestral line, and while it was in error in so holding, under the offer and the record as it now stands its action in declining to receive this evidence must be approved. The question, as it bears on the last proposition of law, may be stated thus: in the absence of any proof whatever of insane conduct on the part of the accused's direct ancestry, may such existence be inferred from evidence to the effect that the accused and his collateral ancestors of near degree were suffering from hereditary or transmissible insanity, or had so suffered? Illustrations have been given in the textbooks and digests of instances, where evidence of insanity in blood relations of the accused, such as nieces, nephews, brothers and sisters, uncles and aunts, has been received. In many of these cases it does not clearly appear that insanity in the direct ancestral line had been previously shown. The reasons why such evidence should not be required are well stated in a discussion of this subject in Wharton & Stille's Medical Jurisprudence, Chap. 30, and summed up by Wigmore, supra, in the statement that hereditary insanity may pass over a generation or individual before reappearing later on. The difficulty in obtaining proof in the direct ancestry is apparent. In People v. Garbutt, supra, where it was not claimed that

either parent or any direct ancestor had been insane, but the defense offered to show insanity in the brother and sister arising from a cause similar to that which it was alleged had induced the destructive act of the defendant, Chief Justice COOLEY says: "If a family of several children should be found, without known cause, to be idiotic, or subject to mental delusions, the inference of hereditary transmission would in many cases be entirely conclusive, notwithstanding the inability to point out anything of a similar character in any ancestor. Insanity in a part of the children only would be less conclusive; but the admissibility of the evidence in these cases cannot depend upon its quantity and it could never be required that it should amount to a demonstration. In some cases its force must be small; in others it will prove hereditary taint with great directness. We think evidence of mental unsoundness on the part of a brother or sister of the person whose competency is in question, is admissible, and that the jury should be allowed to consider it in connection with all the other evidence bearing upon that subject."

In Walsh v. People, supra, a leading case, one of the defenses interposed was that the accused was afflicted with insanity superinduced by epilepsy. An effort was made to show that the brother was suffering from the same malady. The trial court ruled that it was not shown that epilepsy induced, or tended to induce, insanity, or that the disease was transmissible. The court said: "The insanity of parents, or relatives, is also admissible upon the issue of insanity. It tends to show an hereditary taint, and supplements evidence of insanity of the accused. When the question as to the conduct of the plaintiff's brother was asked, it had neither been shown that the father was insane, or that the prisoner was afflicted with epilepsy, or other disease. The conduct of the brother as an isolated, independent fact, was wholly immaterial, and the question asked did not necessarily point to evidence of insanity in him. We think the

fair construction of the ruling of the court was, that the defense should first show that epilepsy is, or tends to produce, insanity, and that the disease is transmissible before entering into the general subject of the conduct of the brother."

In In re Myer's Will, supra, the court says: "The case is barren of facts which tend to show that the paresis with which the mother and brother of testatrix are said to have been afflicted was acquired by them under circumstances that would render it transmissible so as to taint the family blood......The medical writers differ as to its cause or causes......Whether the particular form of the disease from which the testatrix and her family suffered was of such a transmissible character that she might be said to have derived it from her ancestors cannot be determined from the evidence in the record...... There must be evidence tending to show at least that such diseases are hereditary or transmissible."

It is clear that the great weight of authority seems to be that if insanity is shown in the accused, and insanity be shown in collateral kindred of not too remote a degree, and the insanity with which each suffers is transmissible or hereditary in that it may or will reappear in some form or symptom in a descendant, no matter what symptom it may take in the descendant, such evidence may be introduced without showing insanity in the direct line; i. e., parents or grandparents. This would dispose of the objection by the court below and it is further emphasized by the fact that the witnesses who testify to insanity in the ancestors, either direct or collateral, should do so from personal knowledge and observation and not from reputation: Walker v. The State, 102 Ind. 502; 1 N. E. Rep. 856; People v. Koerner, 154 N. Y. 355; 48 N. E. Rep. 731; State v. Windsor, supra. But it must still be shown that the disease was hereditary or transmissible, as indicated. There is not a scintilla of evidence to show the form or symptom of the disease with which the collateral

kinsmen suffered. The accused was afflicted with melancholia. Was it acquired by him under such circumstances that the jury might find that it had been transmitted to him by some ancestor and that the brothers, sister, aunt and cousins were in turn suffering from an insanity likewise transmissible? Not that they suffered from the same symptom, but a transmissible symptom. The various forms of this disease are so numerous and complex, the subject so difficult, that in due protection of the orderly administration of the criminal law it becomes necessary to insist that, before evidence to establish hereditary taint be introduced, proof should be present that the insanity in the collateral kinsmen was transmissible, and not nonhereditary, for it is just as probable in this case that the insanity of the collaterals was produced from some exciting cause, such as grief, terror, disappointed affection, anxiety, great joy or intense worry; or from some physical cause such as drunkenness, use of opium or other narcotics, a blow on the head, exposure to severe heat or cold, or other physical causes. As the offer was merely to show that they were in an insane asylum, or were of unsound mind, it was clearly insufficient, and as there are many and varied forms of insanity, the court, of course, could not take judicial notice of a physiological fact on which the medical profession is not in unanimous accord. Nor should the evidence have been received, and the Commonwealth by cross-examination be required to show nonhereditary cause. As we said in opening, the burden is on the accused to lay his foundation for the admission of such evidence. The benefit (if such it was) of this evidence was not entirely lost, for reference to one of the children being in an asylum was made in the testimony.

The facts show a wilful, premeditated murder, the case was submitted by a charge free from substantial complaint, the defendant had the benefit of able counsel, and there is no error of law to disturb the judgment entered by the court below.

The assignments of error are all overruled, the judgment is affirmed and the record is remitted for the purpose of execution according to law.