## STATE v. GREEN

No. 5477.   Decided February 9, 1935.   (40 P. [2d] 961.)
Rehearing Denied April 6, 1935.

*Arthur Woolley* and *John C. Davis,* both of Ogden, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

ELIAS HANSEN, Chief Justice.

The defendant was charged with, tried for, and convicted of first degree murder without recommendation. He was sentenced to be executed. He appeals. This is the second time this cause has been before us for review. On the former appeal the judgment was reversed and a new trial ordered. *State* v. *Green,* 78 Utah 580, 6 P. (2d) 177. At the second trial some additional evidence was received touching the question of the sanity of the accused and also with respect to the insanity of a number of his blood relatives. Otherwise

the evidence given at the two trials was substantially the same. The former opinion contains a detailed statement of the evidence received at the first trial. In light of the fact that the evidence given at the two trials was substantially the same, it is not necessary to again recite the evidence touching the circumstances surrounding the homicide. Defendant on this appeal has assigned thirty-three claimed errors, most of which relate to the refusal of the trial court to give defendant's requested instructions and to instructions which were given to the jury. Only a few of appellant's assignments are argued in his brief.

Defendant requested the trial court to instruct the jury that:

"You are instructed that even though you should find, from the evidence, beyond a reasonable doubt that the defendant shot and killed James Green, as charged in the information, you shall, nevertheless, find him not guilty, and so say by your verdict, unless you further find from the evidence in the case beyond a reasonable doubt that he was not, at the time of the shooting, insane to such an extent that he either

"(1) did not know the nature of his act, that is, did not know that he had a revolver, that it was loaded, and that if discharged at or towards James Green, it would probably injure or kill him; or

"(2) that when he fired the shot he did not know it was wrong in the sense that such act was condemned by morals or law; or

"(3) that he was unable, by reason of his mental disease, to control his impulses or actions to injure or kill James Green.

"If the defendant was afflicted with a disease of the mind, at the time of the act of shooting into the body of James Green, if you find beyond a reasonable doubt that he did shoot James Green, as charged in the information, in any one or more of the three manners and to the extent hereinbefore in this instruction stated, then and in such case he was not legally responsible, and your verdict must be 'not guilty,' and if you entertain any reasonable doubt upon the matter, or as to either particular, it is your duty to acquit the defendant, and find him not guilty."

The court below refused to instruct the jury as requested in the foregoing instruction, and such refusal is assigned as error. The requested instruction is a concise and correct

statement of law applicable to the case in hand. *State* v. *Green*, supra.

Upon the issue of the sanity or insanity of the accused, the court gave to the jury, among others, the following numbered instructions:

No. 3. "Under his plea of Not Guilty, in addition to denying each of the material allegations of the information defendant has raised the defense of insanity. This is his legal right and is as proper and legitimate a defense, if proved, as any he may have. All evidence bearing upon this defense should receive your careful consideration, keeping in mind, these the Court's instructions as to the law applicable to the case."

No. 6. "If you believe beyond all reasonable doubt that Delbert Green shot and killed James Green, but you believe as a matter of fact that he was insane in that he at that time did not know the nature of his act, that is to say, did not know that he had a revolver, that it might be loaded and that if discharged at or towards James Green it would probably injure or kill him, then it is your duty to acquit him of the crime charged and the lesser included offenses therein."

No. 7. "If you believe beyond all reasonable doubt that Delbert Green shot and killed James Green, but you believe as a matter of fact that he was insane in that when he fired the shot he did not know it was wrong in the sense that such an act was condemned by morals and law, then it is your duty to acquit him of the crime charged and the lesser included offenses therein."

No. 8. "If you believe beyond all reasonable doubt that Delbert Green shot and killed James Green, but you believe as a matter of fact that he was insane in that at that time he was unable by reason of a disease of mind to control his actions or impulses to injure or kill James Green, then it is your duty to acquit him of the crime charged and the leser included offenses therein."

No. 9. "In instructions 6, 7 and 8, just preceding, the Court has given you the law of the defense of insanity as applied in this State, and in applying that law to the facts of this case you are to keep in mind that if any one of those three forms of insanity exist in the defendant at the time of the alleged killing it is your duty to return a verdict of Not Guilty by reason of insanity, or if there is a reasonable doubt in your mind as to his sanity on any one or more of those grounds, it is your duty to resolve that doubt in his favor and acquit him. In every crime there must be a union or joint operation of act and intent, and one whose mind is in any one of the conditions described in instructions 6, 7 or 8 cannot in the eyes of the law have the necessary intent, and is not legally responsible for his

acts. The intent or intention is manifested by the circumstances con-
nected with the offense, and the sound mind and discretion of the ac-
cused."

Counsel for the defendant excepted to the giving of each
of the foregoing instructions and especially to that portion
of instruction No. 3 wherein the jury was informed that
"This is his legal right and is as proper and legitimate
a defense, if proved, as any he may have." It is urged
that the use of the words "if proved" in instruction
No. 3 improperly cast on the defendant the burden of prov-
ing himself insane before he could avail himself of that de-
fense. The law in this jurisdiction is well settled by the for-
mer opinion in this cause, as well as by other decisions of this
court, that one charged with crime is entitled to an acquittal
not only where insanity is proved, but also where the evi-
dence creates in the minds of the jury a reasonable doubt as
to his sanity at the time of the alleged commission of a
charged offense. While instruction No. 3 may not be said
to misstate the law, it, standing alone, is not as favorable to
the defendant as he was entitled to have given. The use of the
words "if proved" in that instruction is not free from objec-
tion, but, in light of the fact that in a number of other in-
structions the court repeatedly informed the jury that the
defendant was entitled to an acquittal if the jury entertained
a reasonable doubt as to his sanity at the time in question,
we are unable to perceive how the jury could have been mis-
led by the objectionable language.

Two objections are urged against instructions Nos. 6, 7,
and 8. It is contended that the expression, "but you believe
as a matter of fact that he was insane," etc., found in these
instructions, tends to relieve the state from establish-
ing beyond a reasonable doubt the sanity of the de-
fendant. There would be merit to such contention
were it not for instruction No. 9, where instructions Nos.
6, 7, and 8 are expressly referred to, and the jury is directed
that "if any one of those three forms of insanity exist in the

defendant at the time of the alleged killing it is your duty to return a verdict of Not Guilty by reason of insanity, or if there is a reasonable doubt in your mind as to his sanity on any one or more of those grounds, it is your duty to resolve that doubt in his favor and acquit him." The language just quoted in instruction No. 9 rendered clear and certain any ambiguity which might be conveyed by the words "but you believe," etc., used in instructions Nos. 6, 7, and 8.

The further objection urged against instructions Nos. 6, 7, and 8 is that such instructions, when read in connection with instruction No. 9, tend to convey the thought that to entitle the defendant to an acquittal the jury must entertain a reasonable doubt of his sanity in all three forms of insanity defined in instructions Nos. 6, 7, and 8. We are unable to find anything in the language of the instructions now under review which conveys or tends to convey such thought. On the contrary, the language of instruction No. 9 when read, as it must be, in connection with instructions Nos. 6, 7, and 8, clearly informs the jurors that, if they entertain a reasonable doubt as to the defendant's insanity in any one or more of the forms mentioned in instructions Nos. 6, 7, and 8, it is their duty to resolve that doubt in the defendant's favor and acquit him.

The trial court in its instruction No. 15 informed the jury that:

"Unless the State of Utah has introduced testimony that creates in your minds a reasonable doubt of the sanity of the defendant at the time in question, the burden is upon the defendant to come forward with evidence that creates in your minds such a reasonable doubt; and under such circumstances, if defendant does produce such testimony, then the burden falls upon the State of Utah to produce testimony that convinces your minds beyond all reasonable doubt of the sanity of the defendant at the time in question.

"If from all the evidence in the case, either that produced by the State or that produced on behalf of the defendant, you are not satisfied beyond a reasonable doubt that the defendant was sane at the time of the homicide, the law excuses him from criminal responsibility, and you should acquit him."

Exception was taken to the whole of the foregoing instruction, and the giving thereof is assigned as error. We do not approve the first paragraph of that instruction. The last paragraph is a correct statement of the law. Good practice requires that the defendant should have confined his exception to that part of instruction No. 15 which is faulty, rather than direct such exception to the whole thereof. However, we shall dispose of the exception upon its merits rather than upon its form. In the absence of evidence tending to show the accused was insane at the time of the alleged commission of the homicide in question, there was no issue as to the insanity of the accused. In such a case the trial judge and the jury are required to assume that an accused is sane. However, this is not such a case. Here we have evidence tending to show that the accused was insane at the time in question. There was no occasion on this record for the trial court to inform the jury as to the law applicable to a case where the question of the sanity of the accused was not in issue. On the former appeal of this cause it was said that:

"When evidence tending to show that the accused was insane enters into the case, the presumption of sanity disappears from the case, and the jury is no longer concerned with the presumption of sanity, but must determine the fact of sanity or insanity solely from the evidence. The presumption of sanity is not evidence of sanity, and may not be so considered by the jury where there is evidence before the jury tending to show that the accused was insane at the time charged." 78 Utah, at page 592, 6 P. (2d) 177, 182.

Further on in the opinion it is said, at page 596 of 78 Utah, 6 P. (2d) 177, 184:

"The correct rule is that the presumption of sanity prevails only until such time as evidence is received at the trial which tends to show insanity, and that it is the duty of the trial judge and not of the jury to determine when there is sufficient evidence to raise an issue as to the sanity or insanity of the accused. When the trial judge shall have determined that there is some evidence which tends to show that the accused was insane at the time of the alleged offense, then it becomes his duty to submit such question to the jury. When the issue is thus raised by the evidence, the jury should be instructed to determine such issue of sanity or insanity solely upon

the evidence, and, if they entertain a reasonable doubt upon that issue, defendant is entitled to an acquittal."

It will be noted that in the first paragraph of instruction No. 15, the learned trial judge indicated to the jury that it was their duty to determine whether or not there was sufficient evidence to raise an issue of fact as to the sanity of the accused, and whether or not such evidence "creates in your minds a reasonable doubt of the sanity of the defendant at the time in question." In the opinion on the former appeal of this cause, the doctrine was announced that it was the duty of the trial judge to determine as a matter of law whether or not there was sufficient evidence of the insanity of the accused to remove the presumption or assumption of his sanity. Obviously, if as a matter of law the evidence of defendant's insanity was sufficient to remove the presumption of sanity from the case, there was no occasion for the court to instruct the jury as to the necessity of the state or the defendant going forward with evidence which "creates a reasonable doubt of the sanity of the defendant at the time in question." While not so expressed, that part of instruction No. 15 just quoted, standing alone, is somewhat suggestive of the idea that the presumption of sanity is evidence of sanity, a doctrine which was disapproved on the former appeal. However, in light of the clear and correct statement of the law in the concluding paragraph of the instruction now under review, we are unable to perceive how the jury could have been misled by the objectionable language contained in the first paragraph of that instruction. The only meaning which can be gathered from the instruction, when considered as a whole, is that the defendant was entitled to an acquittal if the jury, from a consideration of all of the evidence, should entertain a reasonable doubt as to his sanity.

It is further urged that the trial judge committed error prejudicial to the defendant in his instruction No. 12, which reads as follows:

"Considerable evidence has been admitted in this case, which tends to prove the existence of insanity in other members of the defendant's family, collateral relatives, and ancestors. This evidence in and of itself does not prove insanity in the defendant; but if there is other evidence independent of this, which tends to prove that defendant was insane at the time of the shooting, then the evidence of insanity in other members of the family, relatives and ancestors becomes material in aiding in determining the question of defendant's sanity."

There is an apparent unanimity of opinion among text-writers as well as in the adjudicated cases that insanity in the blood relatives of an accused is relevant if there is independent evidence tending to show that he was insane at the time in question. Otherwise such evidence is not admissible. 16 C. J. 557; 14 R. C. L. 619; Smoot's Law of Insanity, p. 488; Wharton & Stille's Medical Jurisprudence, vol 1, p. 314, § 377; *Laros* v. *Commonwealth,* 84 Pa. 200; *Snow et al.* v. *Benton et al.,* 28 Ill. 306; *People* v. *Gambacorth,* 197 N. Y. 181, 90 N. E. 809, 18 Ann. Cas. 425; *Bradley* v. *State,* 31 Ind. 492; *Sawyer* v. *State,* 35 Ind. 80; *State* v. *Van Tassel,* 103 Iowa 6, 72 N. W. 497. The reason for the rule is thus stated by the Supreme Court of Indiana in the case of *Sawyer* v. *State,* supra:

"This argument assumes that a jury may infer the existence of insanity from proof merely of the existence of a cause that may tend to produce it, without any proof whatever that the effect followed the cause. If it were a case where a given effect must follow the cause, there would be force in the argument, because proof of the cause would be proof of the effect. But we know that the various causes that may tend to produce insanity very frequently fail to produce any such effect; and it seems to us that it is not competent to prove the existence of such exciting cause unaccompanied with some proof that the effect followed the cause. Indeed, a jury would not be authorized to find a man to be insane, without proof on the subject other than the fact that a cause existed that tended to produce insanity. Thus, in the case of *Bradley* v. *State,* 31 Ind. 492, the court below charged the jury, that 'if it had been proved that the mother of the defendant was insane, and that insanity in the mother raises a strong presumption that it is transmitted to the offspring, yet it rests upon the defendant to prove that he was insane at the time the act was committed. The facts that the mother was insane,

that the twin brother of the mother was also insane, and that a cousin was insane, if proved, would not be sufficient of themselves, to show insanity in the defendant, but are facts strongly tending to show hereditary insanity in the family, and proper for you to consider with the other testimony in the case, to aid you in determining whether the defendant was insane or not, when the act was committed.' This charge was held to be correct."

The instruction just quoted conveys the same thought with respect to the effect of evidence of insanity of blood relatives of an accused that is conveyed by the instruction under review. In the absence of an instruction as to the purpose for which evidence was received touching the sanity of the blood relatives of the acused, the jury might well be at a loss to know what legal effect should be given the same. While the instruction under review would have been more satisfactory if it had been more definite as to the purpose for which it was received, rather than merely informing the jury generally when such evidence is material, still such instruction may not be said to announce any wrong principle of law, nor any principle of law not applicable to the evidence.

Some of the other instructions given are attacked by the assignments of error. After a careful examination of such other assignments, we have reached the conclusion that none of them has sufficient merit to justify a detailed discussion thereof. The instructions given to the jury, when read and considered as a whole, fully and fairly presented to the jury the law applicable to the evidence.

Prior to the trial of this cause in the court below, defendant moved for a change of venue upon the alleged ground of the bias and prejudice of the citizens of Davis county and particularly those who were likely to be selected as jurors. Two affidavits, one by counsel for the dedant and one by a resident citizen of Davis county, were filed in suport of the motion. The state resisted the motion and filed counter affidavits. The motion was by the court denied. Such ruling is assigned as error. The record

before us contains all of the questions and answers of the jurors touching their qualifications to act in the trial of this cause. The examination shows, that many of the jurors had read or heard something concerning the cause about to be tried, but, so far as it appears, no serious difficulty was experienced in securing a jury. The matter of granting or refusing to grant a change of venue is largely in the discretion of the trial court. This court will not interfere with such discretion in the absence of a showing that it has been abused. *State* v. *Haworth*, 24 Utah 398, 68 P. 155; *State* v. *Carrington*, 15 Utah 480, 50 P. 526; *State* v. *Riley*, 41 Utah 225, 126 P. 294; *State* v. *Cano*, 64 Utah 87, 228 P. 563; *State* v. *Kukis*, 65 Utah 362, 237 P. 476; *State* v. *Christensen*, 73 Utah 575, 276 P. 163. The record fails to disclose an abuse of discretion by the trial judge in refusing to grant a change of venue.

We find no prejudicial error in the record. The defendant was given a fair trial and was ably represented by counsel.

The judgment is affirmed.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ.,, concur.