UNITED STATES, Appellee

v

HOWARD L. MURPH, Airman Third Class,
U. S. Air Force, Appellant

13 USCMA 629, 33 CMR 161

*Colonel Daniel E. Henderson, Jr.*, argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski.*

*Captain Donald W. Brewer* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

KILDAY, Judge:

Appellant was tried by general court-martial, convened at Weisbaden Air Force Base, Germany, on charges of larceny and housebreaking, in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 USC §§ 921 and 930, respectively. He was found guilty and sentenced to bad-conduct discharge, total forfeitures, confinement at hard labor for one year, and reduction to airman basic. The convening authority approved the sentence and a board of review in the office of The Judge Advocate General of the Air Force affirmed the findings and sentence.

At trial, the Government established that the accused surreptitiously entered the German Federal Post Office located on the above base, and took from the cash drawer German and American currency in the amount of $481.00. Entry was made through a window when appellant noticed a "be back soon" sign on the door. The clerk returned in two or three minutes and discovered the theft. Muddy footprints led to the accused, and a properly admitted confession recited the details of the entry and the motive of overwhelming debts.

At the opening of the trial, individual defense counsel offered a motion to make one of the specifications more definite and certain. The motion was overruled and, for appellant, individual defense counsel entered a plea of not guilty to both charges and specifications. No other motion was made by appellant prior to proceeding to trial.

When the Government rested, civilian individual defense counsel made an opening statement to the court-martial. Therein, he stated he did not wish to deny that appellant took the money out of the branch post office, nor that he had wrongfully entered the same. Individual defense counsel announced the defense position would be that the appellant lacked the requisite mental capacity to entertain the specific intent for the crimes charged or any lesser included offense; and elaborated thereon.

Individual defense counsel sought to secure the admission of certain evidence by stipulation. There was disagreement as to whether trial counsel had agreed to so stipulate. However, no stipulation as to the proposed evidence was made. Thereafter, individual defense counsel filed requests for depositions by oral examination of four witnesses, residents of New York. Attached to such written requests was correspondence by individual defense counsel with some of the proposed witnesses. Such correspondence was offered and accepted as being the evidence anticipated from each of such witnesses, should depositions be obtained. It will suffice to state that none of the anticipated testimony indicated that appellant suffered from any mental defect or disease. As to appellant, the testimony consisted of details of the environment in which he had lived and been reared. The anticipated testimony indicated the appellant's mother had been committed to a mental hospital in New York for a mental disease, and had remained as such patient for a number of years, and was still such patient.

As to appellant's mother, the request for deposition was "to prove the present diagnosis . . . [of the mother], and to prove that she is still confined to

a mental institution under treatment for this disease; further, to prove by official records in the custody of the witness the diagnosis upon which . . . [the mother] was originally committed; and to establish the effect which a mental disease of this nature would have, by heredity and childhood enivronment [sic], upon a child who was in the mother's custody and care up until his 15th year of life."

An effort was made by individual defense counsel to secure the admission into evidence by stipulation of two clinical records of appellant containing a diagnosis of mental or character defects of appellant. Trial counsel refused to stipulate and objected to their admission in evidence. A later request that trial counsel procure the medical records of appellant and the attendance of the custodian thereof was denied by the law officer. Clearly such records were not admissible as bearing upon the mental condition of appellant, and the law officer was correct in sustaining the objection to their admission and in refusing the request that trial counsel secure the same. Paragraph 122c, Manual for Courts-Martial, United States, 1951; United States v Thomas, 13 USCMA 163, 32 CMR 163.

Upon the presentation of the requests for depositions and the accompanying documents, the law officer indicated he would withhold his ruling thereon until the case offered for the defense had been completed. During a recess, required to await the appearance of a defense witness, an out-of-court hearing was held at which the request for depositions was argued at some length and denied by the law officer.

Immediately after such out-of-court hearing, the court-martial reconvened and the defense offered as a witness, Captain Nicholas A. Green, a psychiatrist. Captain Green testified that he had examined appellant and came to the conclusion he suffered from a personality disorder and not a mental disease or derangement; that appellant knew right from wrong and had the capacity to adhere to the right; that he was not misinterpreting reality, and was not suffering from delusions; that he was not reacting to hallucinations and was in full control of his basic faculties as defined in psychiatry. After the testimony of Captain Green the defense rested.

We shall, at this point, consider the assignment granted by this Court as follows:

Whether the law officer erred in denying the defense request to take depositions.

Article 49, Uniform Code of Military Justice, 10 USC § 849, authorizes the taking of depositions. The same, by Article 49(d), "so far as otherwise admissible under the rules of evidence, may be read in evidence." Rule 15 of the Federal Rules of Criminal Procedure authorizes the taking of depositions if it appears the testimony of the witness "is material." See United States v Glessing, 11 FRD 501 (Minn) (1951). It is clear the evidence sought by deposition must be shown to be material and otherwise admissible.

"Proof of insanity of a relative of the defendant is inadmissible until there is some evidence that the defendant is insane." [1 Wharton, Criminal Evidence, 12th ed, § 213, page 437.]

"It may be shown that an ancestor was insane or the progeny of the accused is insane if there is independent evidence directly tending to prove the defendant insane." [Underhill, A Treatise on the Law of Criminal Evidence, 5th ed, § 456, page 1145.]

See 20 Am Jur, Evidence, § 349, page 325; Wigmore, Evidence, 3d ed, § 232.

This question was before the Pennsylvania Supreme Court in Commonwealth v Dale, 264 Pa 362, 107 Atl 743, 6 ALR 1482 (1919), and in a frequently cited opinion that court said:

"Therefore it has been ruled that hereditary insanity of itself is not independent proof of the insanity of the prisoner, but it is circumstantial evidence used to corroborate other more direct proof of insanity in the

accused. Of itself it cannot be used as a defense. . . .

"Before receiving such evidence as grounds for a presumption of possible insanity, there must be some evidence showing insanity in the accused."

In Winburn v Commonwealth, 181 Ky 183, 203 SW 1073 (1918), the following appears:

"Here there was no preliminary independent evidence tending to show that appellant was insane at the time of the homicide, nor was the offered evidence of insanity in his family accompanied by an avowal that it would be followed by such independent evidence. It therefore follows that the offered evidence was not admissible."

See State v Green, 86 Utah 192, 40 P2d 961 (1935); People v Kohlmeyer, 284 NY 366, 31 NE2d 490 (1940); People v Gambacorta, 197 NY 181, 90 NE 809 (1910); State v Moore, 42 NM 135, 76 P2d 19 (1938); State v Hayward, 62 Minn 474, 65 NW 63 (1895). See also Weihofen, Mental Disorder as a Criminal Defense (1954).

As exemplifying the rule, and of historical interest, the following is taken from the charge to the jury in the trial of Charles J. Guiteau for the assassination of President James A. Garfield. Guiteau's Case, 10 Fed 161, 167 (1882):

"Evidence as to insanity in the parents and immediate relatives is also pertinent. It is never allowed to infer insanity in the accused from the mere fact of its existence in the ancestors. But when testimony is given directly tending to prove insane conduct on the part of the accused, this kind of proof is admissible as corroborative of the other. And therefore it is that the defence have been allowed to introduce evidence to you covering the whole life of the accused, and reaching to his family antecedents."

Rather than containing some evidence of the insanity of the appellant,

the record before us shows the exact opposite. The only psychiatric testimony is by Captain Green and is the unequivocal statement that the appellant is legally sane. There is no evidence by any witness which in anywise raised any issue as to any mental defect in the appellant. Therefore, under the authorities herein cited, the evidence sought by deposition was not material to the state of case before the law officer and would not be admissible if secured. He was correct in refusing the request for depositions.

It should be pointed out that the documents in support of the request for depositions as to the environment in which appellant was raised contained nothing to indicate abnormality on the part of appellant. To the contrary, the same indicated that proposed witnesses either had no knowledge of the appellant's childhood or that from adolescence he was well adjusted, presenting no behavorial problem; that he was gentle and nonbelligerent. The only factual matter sustained by such documents was to the effect that appellant was the product of a broken home and of a family in most difficult financial circumstances, requiring him to be a recipient of public welfare over a protracted period of time.

During the hearing prior to sentence, in mitigation and extenuation, practically all of the information contained in the documents submitted in support of the request for depositions was, by stipulation, submitted to the court-martial. Thus, appellant received the full benefit of all of that information to which he was entitled.

The remaining assignment of error granted by this Court is as follows:

Whether the law officer unduly restricted defense questioning of the expert witness, Dr. Green.

This assignment brings before us the action of the law officer in sustaining objections by trial counsel to questions asked of the expert witness by defense counsel. The witness was Captain Green, called by the defense and to whose testimony we have given atten-

tion in our consideration of the prior assignment. After Captain Green had testified that appellant was sane, as we have previously noted, defense counsel propounded several questions, to substantially the following intendment: Whether schizophrenia is hereditary; whether accused's character and behavior disorder would authorize administrative separation; whether accused had a normal tolerance for frustration; whether accused would react as a normal person reacts under all situations; and whether accused's offenses might have resulted from impulse generated by his character and behavior disorder, rather than by an intent to deprive the post office of property belonging to it. Objection of trial counsel to each question as it was asked was sustained and none of the questions answered.

There was no evidence appellant suffered from schizophrenia; hence, whether such condition is hereditary is purely academic and not relative or material. Whether an accused might be subject to administrative separation has no bearing on his guilt or innocence of the crime for which he is on trial. In the absence of evidence that appellant had a mental impairment, testimony that he would respond explosively to mild irritation or other stimuli would hardly be material. We believe the law officer was correct, in the posture of this record, in sustaining each of the objections made.

Individual defense counsel propounded a hypothetical question to Captain Green. After his statement of the factual part thereof, counsel formulated a question as to whether, under the circumstances stated, the expert would say it was possible or probable the accused's actions might have resulted from impulse generated by his character and behavior disorder rather than by an intent to deprive the post office of property belonging to it, or appropriate the same to his own use. We do not perceive in what manner such inquiry could reasonably be related to any issue as to appellant's capacity to form the requisite intent. Even though such inquiry might be pertinent to the test of mental responsibility in some jurisdictions, it was clearly immaterial to the military rule in that connection.[1]

We fail to find that the law officer arbitrarily or unduly restricted defense questioning of the expert witness and the assignment is overruled.

Finding no cause to disturb the decision of the board of review, the same is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.

---

[1] See United States v Kunak, 5 USCMA 346, 17 CMR 346; United States v Smith, 5 USCMA 314, 17 CMR 314.