# CALTON *v.* UTAH.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 1408. Argued January 2, 1889. — Decided March 11, 1889.

A statute of Utah provided that every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the penitentiary for life, at the discretion of the court; *Held,*

(1) That the authority given to substitute imprisonment at hard labor in the penitentiary for life for the punishment by death, when the accused is found guilty of murder in the first degree, depends upon a previous recommendation to that effect by the jury;

(2) That when a person is on trial charged with the commission of mur-

der in the first degree, it is the duty of the court to inform the jury of their right, under the statute, to recommend imprisonment for life at hard labor in the place of the punishment of death; and that failure to do so is error.

THE case is stated in the opinion.

*Mr. John H. Mitchell* for plaintiff in error.

*Mr. Assistant Attorney General Maury* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error, Calton, was indicted in the District Court of the Second Judicial District of the Territory of Utah for the crime of murder in the first degree, in that he " feloniously, unlawfully, wilfully, purposely, premeditatedly, deliberrately, and of his malice aforethought," killed and murdered one Michael Cullen. Under the plea of not guilty evidence was introduced by him for the purpose of showing: first, that at the time of the killing he was incapable, by reason of unsoundness of mind, of committing any criminal offence; second, that at most the killing was " upon a sudden quarrel or heat of passion," and, therefore, he could not be found guilty of any higher offence than voluntary manslaughter; third, that at the time of the killing he had reasonable ground to apprehend, and did apprehend, that the deceased was about to do him great bodily harm.

He was found guilty of murder in the first degree. A motion for a new trial having been denied, and the defendant having elected, as under the territorial statutes he might do, to suffer death by shooting, rather than by hanging, it was adjudged that on a named day, between certain hours, he be publicly shot. Upon appeal to the Supreme Court of the Territory that judgment was affirmed, "save as to the time and the publicity of the execution thereof." This saving was because the local statute provides that " a judgment of death must be executed within the walls or yard of a jail or some convenient private place in the district." Laws of Utah,

1878, p. 136. The present writ of error brings up for review that judgment of affirmance.

It appeared in proof that Calton, Tiberty and Cullen were residents of the Star Mining District in the Territory, and well acquainted with each other. On the morning the shooting occurred, Calton and Tiberty went to Milford, a small town near by, and there happened to meet Cullen. During the day they all indulged in strong drink, and became somewhat intoxicated. They were together during most of the time, and apparently upon friendly terms. About six o'clock in the afternoon the three started for home. They left Milford together in a wagon, Calton and Cullen sitting on the driver's seat, Calton driving, and Tiberty on a pile of ore sacks in the body of the wagon. They did not get far in the direction of their homes when Tiberty, leaving his bottle of liquor on the sacks, alighted from the wagon to get a whiplash that Calton had dropped. While he was on the ground a dispute, in some way not fully explained, arose between Cullen and Calton about the possession of Tiberty's bottle of liquor. Subsequently, and while the latter was off the wagon, a struggle ensued between Cullen and Calton, during which they clinched, each one having hold of the other's throat in such manner as to satisfy Tiberty, who was a short distance away, that they were angry. At one time Cullen seemed to be pressing Calton against or over the dash-board. The latter finally released himself from the grasp of his antagonist, who was much the stouter man, and, jumping to the ground, took a loaded pistol from a bundle he had in the wagon, and fired at Cullen five shots in rapid succession. According to the statements of Tiberty the deceased did not move after the first shot, the defendant saying, immediately after that shot was fired, that he had killed him, and that he "might as well give him the rest." Calton and Tiberty returned to Milford with the dead body in the wagon, and the former surrendered himself to an officer of the law.

The penal code of Utah established by the act of February 18, 1876, provides that " every murder perpetrated by poison, lying in wait, or any other kind of wilful, deliberate, malicious

and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design, unlawfully and maliciously to effect the death of any other human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind, regardless of human life, is murder in the first degree; and any other homicide committed under such circumstances as would have constituted murder at common law, is murder in the second degree." Compiled Laws Utah, 1876, p. 585.

The same code further provides that: "Every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the penitentiary for life, at the discretion of the court, and every person guilty of murder in the second degree, shall be imprisoned at hard labor in the penitentiary for not less than five, nor more than fifteen years." Compiled Laws Utah, 1876, p. 586.

It is clear that the authority given in the section last quoted, to substitute imprisonment at hard labor in the penitentiary for life for the penalty of death, when the accused is found guilty of murder in the first degree, depends upon a previous recommendation to that effect by the jury. Without such recommendation the court, in the absence of sufficient grounds for a new trial, has no alternative but to sentence the accused to suffer death. While in this case the jury were instructed as to what constituted murder in the first and second degrees, they were not informed as to their right, under the statute, to recommend imprisonment for life at hard labor in the penitentiary in place of the punishment of death. If their attention had been called to that statute, it may be that they would have made such a recommendation, and thereby enabled the court to reduce the punishment to imprisonment for life. We are of opinion that the court erred in not directing the attention of the jury to this matter. The statute evidently proceeds upon the ground that there may be cases of murder in the first degree, the punishment for

which by imprisonment for life at hard labor will suffice to meet the ends of public justice. Its object could only have been met through a recommendation by the jury that the lesser punishment be inflicted, and it is not to be presumed that they were aware of their right to make such recommendation. The failure of the court to instruct them upon this point prevented it from imposing the punishment of imprisonment for life, even if, in its judgment, the circumstances of the case rendered such a course proper. It was well said in the dissenting opinion of Mr. Justice Henderson, in the Supreme Court of the Territory, that by the action of the District Court "the prisoner was deprived of a substantial right. The determination of the question as to whether he should suffer death or imprisonment was one of vital consequence to him. The jury to whom the statute commits the determination of that question, at least in part, were not informed of their duty and responsibility in the matter so as to require them to exercise their judgment and discretion in relation to it, and by the verdict they rendered the court had none." These views are in accordance with the fundamental rules obtaining in the trial of criminal cases involving life.

Other questions were discussed at the bar, but as the instructions relating to them are somewhat obscure, and as they may not arise upon another trial in the form in which they are now presented, we forbear a determination of them.

*For the error indicated the judgment is reversed, with directions for a new trial, and for such further proceedings as may not be inconsistent with this opinion.*