PEOPLE *v.* POOLE.

1. CRIMINAL LAW—TRIAL—CONDUCT OF JUDGE—INSTRUCTIONS TO JURY.

The following charge in a prosecution for manslaughter is open to the objection that it tends to inflame the minds of the jury: "This awful deed was committed in the broad light of day in the open streets of Ypsilanti, in bold and wicked defiance of all human and divine law. * * * So far as we know, on this April morning life was as sweet and precious to this poor wife and mother as it was to the prisoner. A more horrible or brutal death can scarcely be conceived. It shocked the senses of the entire community. There remains but little that you or I can do. We cannot restore life to this stricken woman; but we may do our share towards the guarding and protecting of human life hereafter."

2. SAME—HOMICIDE—MURDER—MANSLAUGHTER.

It is error to charge the jury that the defendant, who killed his wife after being informed of her unlawful relations with another man, might be found guilty of no higher crime than manslaughter, if he was in a state of such excitement that his reason was dethroned and he was driven along by an uncontrollable and irresistible impulse so that he was no longer morally or legally responsible for his crime or what he was doing or where he was, and had gone some distance from this scene before he was able to recover himself and his senses.

3. SAME—INSANITY—MANSLAUGHTER.

A respondent is guilty of manslaughter for killing a person, as distinguished from murder, if reason was at the time disturbed by passion to an extent which might render ordinary men of fair average disposition liable to act rashly or without due deliberation, and from passion rather than judgment.

4. SAME—EVIDENCE—CROSS-EXAMINATION.

A respondent on trial for murder may be cross-examined after he has testified in his own behalf, as to any discrepancies between his testimony and a prior statement made by the respondent at the time of arraignment.

Error to Washtenaw; Kinne, J. Submitted November 12, 1909. (Docket No. 164.) Decided December 30, 1909.

Alpheus Poole was convicted of murder in the first degree, and sentenced to imprisonment for life in the State prison at Jackson. Reversed.

*A. J. Sawyer, Jr.,* for appellant.

*John E. Bird,* Attorney General, *George S. Law* and *Charles W. McGill,* Assistants Attorney General, and *Carl Storm,* Prosecuting Attorney, for the people.

BROOKE, J. Respondent was convicted of murder in the first degree. He was, at the time of the commission of the act for which he was prosecuted, a man 33 years of age, had been married 12 years, and lived with his wife and seven children in the city of Ypsilanti. The eldest child (born out of wedlock) was 14 years old. The youngest were twins about one year old. On the evening of April 28, 1909, respondent went home from work at the usual time. His wife was present and prepared the evening meal. She, however, did not eat it with the family, but left the house, going to a house about three blocks distant, in which one Henry Martin was living. At about 9 o'clock in the evening, respondent's wife not having returned, he went out to look for her. Not finding her at the home of an immediate neighbor, he went to the house of a Mrs. Hamilton, who was a second cousin of his own, and stepmother to Henry Martin. Respondent did not find his wife at the Hamilton home, so returned to his own home, and from there tracked his wife, in the new fallen snow, to the door of Henry Martin's house. He knocked, but got no response, and, after waiting around for a short time, again returned to his own home. At about 5 o'clock the next morning he again visited Mrs. Hamilton and told her his wife had stayed away all night. Mrs. Hamilton thereupon told him that an undue intimacy existed between

his wife and Henry Martin, and that his wife had told her. that Martin intended to marry her, and that she would go away with him and take the twins. Respondent then returned to the Martin house, gained admission, but did not find his wife there. Passing through the house, however, he opened the back door, and there saw fresh tracks in the snow. Following these for about four blocks, he overtook his wife, and, after walking with her a short distance and holding a brief conversation with her, he drew a razor and instantly killed her by cutting her throat. Respondent admitted the homicide, so that the sole question for the determination of the jury was whether respondent was guilty of murder in the first degree, murder in the second degree, or manslaughter.

There are 67 assignments of error. We will consider first those relating to the charge of the court. After properly defining the various crimes of any one of which the respondent might be convicted, the learned circuit judge proceeded as follows:

"The crime which you are now considering was not committed in secret or in the dark. This awful deed was committed in the broad light of day in the open streets of the city of Ypsilanti, in bold and wicked defiance of all human and divine law. You have heard the story of this crime from the lips of the prisoner and from others who were eyewitnesses thereto. You have been told what occurred at the time and the statements of the prisoner at the time. It is for you to bear in your minds and memory all of these facts and circumstances. So far as we know, on this April morning life was as sweet and precious to this poor wife and mother as it was to the prisoner. A more horrible or brutal death can scarcely be conceived. It shocked the senses of the entire community. There remains but little that you or I can do. We cannot restore life to this stricken woman; but we may do our share towards the guarding and the protecting of human life hereafter.

"It appears without dispute that this prisoner, on the discovery of his wife, that she had left the Martin residence, followed her tracks along the streets of Ypsilanti for several blocks, and he finally overtook her, walked

with her some distance, and after some altercation drew his razor from his pocket and sent her instantly into eternity. He is here now pleading for mercy. If from the evidence in this case you find that he was in a state of such excitement that his reason was dethroned, that he was driven along by an uncontrollable and irresistible impulse so that he was no longer morally or legally accountable for his conduct, so that he did not realize his crime or what he was doing or where he was, and had gone some distance from this scene before he was able to recover himself and his senses, then, under such circumstances, the defendant in this case is guilty of no higher crime than manslaughter; but, gentlemen of the jury, if under the evidence in this case, you find that when this prisoner committed this deed there was anger, hatred, and malice in his heart, that he wickedly and wilfully applied this weapon of death to the throat of his wife intending to take her life, and that he did it deliberately knowing just what he was doing, and doing it because he wished to do it, then the defendant is guilty of murder.

"Now, gentlemen, under the evidence in this case, if you find the prisoner guilty, you can find him guilty of murder in the first degree, or murder in the second degree, or guilty of manslaughter, and it will be your duty, if you find him guilty, to find in your verdict the crime of which you find him guilty. In your deliberations there will be, I am sure, no hesitation or false sentimentality. To your sober and mature judgment are committed the rights of the people of this State, as well as the rights of the defendant."

It is urged on behalf of respondent that the portion of the charge above quoted is erroneous: (1) In that it tended to inflame the minds of the jury; and (2) that it improperly defined a condition of mind which would render respondent guilty of manslaughter only. With reference to the first point, it is sufficient to say that we think the charge is open to the objection urged. Touching the second, it is clear that that portion of the charge of the court, above quoted, in which he defines a condition of mind at the time of the homicide which would justify the jury in bringing in a verdict for manslaughter only, is entirely at variance with his earlier instruction to the jury

159 MICH.—23.

upon that point, as well as contrary to the decisions of this court.

In the case of *Maher* v. *People*, 10 Mich. 212 (81 Am. Dec. 781), a case as to the facts much resembling the case at bar, this court declared the law on the subject under consideration as follows:

" It will not do to hold that reason should be entirely dethroned, or overpowered by passion, so as to destroy intelligent volition. [Citing cases.] Such a degree of mental disturbance would be equivalent to utter insanity, and, if the result of adequate provocation, would render the perpetrator morally innocent. * * * The principle involved in the question, and which we think clearly deducible from the majority of well-considered cases, would seem to suggest, as the true general rule, that reason should, at the time of the act, be disturbed or obscured by passion to an extent which *might render* ordinary men, of fair average disposition, *liable* to act rashly or without due deliberation or reflection, and from passion, rather than judgment."

So far as we have been able to learn, this rule has never been departed from in this State.

The record shows that, when arraigned, respondent admitted the homicide, and asked the court to determine what crime had been committed. The testimony of respondent was thereupon taken, and the court then directed that a jury be called to determine what crime had been committed, if any. Upon the trial respondent was again sworn in his own behalf, and in the course of his direct examination he detailed the conversation held with his wife, immediately preceding the homicide. On cross-examination the prosecutor was permitted, over objection, to go into his testimony upon the same subject given before the court at the earlier hearing. Respondent assigns error upon this ruling of the court. We do not think the objection well taken. Having testified (at the trial before the jury) as to what was said by himself and deceased immediately before the homicide, it was competent for the prosecutor to show that he had given a different ver-

sion of the conversation under oath upon his first examination.

The other assignments of error have been considered, but need no discussion.

Because of the errors pointed out, the judgment is reversed, and a new trial ordered.

BLAIR, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.