319 P.2d 859

**STATE of Utah, Plaintiff and Respondent,**

v.

**Barton Kay KIRKHAM, Defendant and Appellant.**

No. 8684.

Supreme Court of Utah.

Jan. 6, 1958.

Wayne L. Black, Lamar Duncan, Salt Lake City, for appellant.

E. R. Callister, Jr., Atty. Gen., Walter L. Budge, Asst. Atty. Gen., for respondent.

HENRIOD, Justice.

Appeal from a murder conviction. Affirmed. Italics are ours.

The facts are not in dispute. While burglarizing a grocery store and having taken money therefrom, defendant required David Avon Frame and Ruth Holmes Webster to lie down on the floor, when he shot each in the back of the head, killing both.

■ Defendant urges error in 1) the giving of an instruction relating to insanity and 2) in failing to instruct that the state had a mental institution for those suffering from mental illness.

As to 1): The instruction given, so far as pertinent here, reads:

"Insanity is an element in determining questions of guilt of or punishment for crime only when it renders the person so affected irresponsible or partly irresponsible. That is, the defendant cannot be convicted of a crime, if, at the time of the act, he was insane to such an extent that he did not know the nature of the act; that is, did not know he had a revolver, that it may be loaded, or that, if discharged, it may injure or kill; or that, when he fired the shot, he did not know it was wrong in the sense that such act was condemned by morals or law; or that he was unable, by rea-

son of mental disease, to control his actions or impulses to injure or kill David Avon Frame."

Counsel for defendant attack only that part of the instruction relating to knowledge of the act being "wrong in the sense that such act was condemned by morals *or* law." They urge that use of the disjunctive required the jury to find defendant guilty if they believed he knew his act was a violation of the law of the land, even though he may have had a mental illness that prevented him from knowing his act was morally wrong. We cannot agree. Eliminating the phraseology not objectionable to defense counsel and pinpointing that to which they attribute error, we have the following:

"The defendant *cannot be convicted* of a crime, if, at the time of the act, he was insane to such an extent that * * * when he fired the shot, he did not know it was wrong in the sense that such act was condemned by morals *or* law. * * * *"

Neither uncertainty nor confusion appears in such language. It tells the veniremen they *cannot* convict if they believe defendant was insane to such extent that he did not know his act was condemned morally; and it tells them that they *cannot* convict if they believe he was insane to the point where he did not know his act was condemned by law. To assert that to use the word "or" between "morals" and "law" is to exclude any consideration of sanity from a moral standpoint seems to do injustice to the word. If it excludes consideration of insanity from a moral standpoint, in logic it would seem necessary to exclude consideration of insanity from a legal standpoint. Such conclusion would eliminate consideration by the jury of both aspects of mental disorder.

We consider that the instruction containing the disjunctive told the jury they could not convict defendant if they believed that because of mental disease he did not know his act was wrong morally, even though they believed he knew full well that his act was prohibited by law. We also consider that the instruction as given told the jury that they could not convict defendant if they believed that because of mental disease he did not know his act was legally wrong, even though they believed that he knew full well that his act was wrong morally. So saying, we are constrained to believe that had the court couched the instruction in conjunctive language, the defense well might have claimed it vulnerable to attack as being too onerous, requiring the jury to find two types of mental disorders rather than one, in order to accord the defendant an acquittal. The instruction as given made it possible for the jury to acquit defendant for either of two reasons, whereas had the matter been con-

junctively put, such choice would have been impossible.

In our opinion, the subject instruction, approved in State v. Green,[1] strictly from the standpoint of what is most favorable for the accused in a criminal case, is one of the most liberal that can be found in the country. Reading it as we do, without indulging fine distinctions between legal and medical terminology,—frequently misunderstood or not understood by laymen,—and without espousing the philosophy advanced by some that the question of insanity should be taken from the jury and vested in professional people, we believe such instruction to be the embodiment of almost all of the approved instructions on the subject which have been sired by McNaghten's case (the so-called right and wrong test),[2] State v. Pike (no legal responsibility if the act is the product of mental disease),[3] People v. Schmidt (no legal responsibility if the accused did not know the act was wrong morally),[4] Durham v. United States (no legal responsibility if the act is the product of mental disease *or* mental defect),[5] and what we believe to be the most recent case on the subject, State v. Collins (right and wrong test representing the great weight of authority).[6] In these cases is found a wealth of authority practically exhausting the arguments that perennially are presented in the continuing debate among professional men as to what test properly should be applied in determining guilt or innocence where the factor of mental disturbance of one degree or another is involved.

The instruction we espouse, set out above, pretty much represents a reflection of both facets of the McNaghten jewel, satisfied the eminent Mr. Justice Cardozo's eruditely expressed preferences in the Schmidt case, should satisfy the classmates of the irresistible impulse school, and even should not be too offensive to the Durham rule advocates.

■ As to 2): The instruction requested and which was denied, read as follows:

"The State of Utah has a mental hospital where patients who are suffering from mental illness may be incarcerated and treated for such time as is considered by a court of competent jurisdiction to be necessary."

It seems apparent that counsel for the defense requested this instruction after the District Attorney, arguing to the jury, stated that, "Should you acquit him, he

1. 86 Utah 192, 40 P.2d 961; Id., 78 Utah 580, 6 P.2d 177, 184.
2. 10 Clark & F. 200.
3. 1870, 49 N.H. 399.
4. 216 N.Y. 324, 110 N.E. 945, L.R.A. 1916D, 519.
5. 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430.
6. Wash.1957, 314 P.2d 660; 45 A.L.R.2d 1447.

would be turned loose," counsel urging that such remark was a misstatement of the law and one which tended unfairly and prejudicially to influence the jury.

Under the circumstances of this case we cannot but conclude that failure to give the instruction was not prejudicial. In the first place the District Attorney, in a technical sense, was not in error, since the jury had before it a verdict which it could have signed which read: "We the Jurors impaneled in the above case, find the defendant Barton Kay Kirkham not guilty." Had this verdict been signed, the District Attorney's statement no doubt would have been correct. We are not aware of any statutory requirement that the defendant be detained under such circumstances. Any further restraint necessarily would have had to result from a different and independent procedure that never might have eventuated. Furthermore, the expert medical witness called by defendant's own counsel, clearly indicated that the defendant's disorder was not the type that usually resulted in hospitalization. Such evidence proffered by the defendant himself reasonably could provoke interpretation in the mind of the District Attorney and in the minds of the veniremen themselves, that by acquitting the defendant he would be released. Even though the District Attorney's remark may have been correct, depending on what course the jury might have taken, and in spite of the testimony of the doctor, but assuming arguendo that the remark of the District Attorney was improper, even so, the record indicates that any such statement was so watered down by attack on and denial of such statement by opposing counsel, of its accuracy, as to destroy its effectiveness. Further, it seems to us, that had the jury been impressed by the questioned remark to the point where they decided to convict rather than to acquit, on the theory they did not wish defendant to be returned to society, certainly they would have returned the verdict, one of several handed them, that would have recommended life imprisonment, which they failed to do.

In performing our most unpleasant task of affirming this conviction, we feel we would be remiss if we did not compliment and thank Messrs. Wayne L. Black and Lamar Duncan, of counsel for the defense, for the highly skilled and most earnest presentation of this case, which they, at the instance of the courts of this state, undertook to defend as a service to their fellow man.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur.

WORTHEN, J., concurs in result.