Darrell Devere **POULSON**, Appellant,

v.

John W. **TURNER**, Warden, Appellee.

No. 8563.

United States Court of Appeals
Tenth Circuit.

April 19, 1966.

William G. Fowler, Salt Lake City, Utah, for appellant.

Ronald L. Boyce, Asst. Atty. Gen., Salt Lake City, Utah (Phil L. Hansen, Atty. Gen., Salt Lake City, Utah, with him on the brief), for appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

PICKETT, Circuit Judge.

Darrell Devere Poulson, aged 23 years, was convicted of murder in the first degree in the District Court of Utah, Utah County, and sentenced to death. The conviction was affirmed. State v. Poulson, 14 Utah 2d 213, 381 P.2d 93. Certiorari was denied by the Supreme Court of the United States. 375 U.S. 898, 84 S.Ct. 177, 11 L.Ed.2d 126. After exhausting his remedies in the state court—State v. Poulson, 16 Utah 2d 151, 397 P.2d 70, cert. denied 381 U.S. 947, 85 S.Ct. 1795, 14 L.Ed.2d 710,—Poulson instituted this habeas corpus proceeding in the United States District Court for the District of Utah, alleging that he had not been afforded a constitutional trial. The case was submitted to the District Court on the records of the trial and the post-conviction proceedings in the state court. This is an appeal from an order dismissing the habeas corpus petition.

The record shows that on the evening of September 16, 1961, 11-year old Karen Mechling was employed as a baby sitter in the home of a neighbor in the town of American Fork, Utah. The following morning her body was found in some weeds behind that home. The young girl had been raped and beaten to death. Shortly thereafter, Poulson was arrested in Las Vegas, Nevada upon another charge, and returned to Provo, Utah, whereupon he advised authorities there that he had committed the Mechling murder and gave details as to how it was accomplished. At the trial, insanity was the sole defense, consequently a detailed description of the sordid crime would serve no useful purpose. As required by Utah statute, U.C.A., 1953, 77–24–17, when the issue of insanity is raised as a defense in a criminal case, the court appointed a panel of three alienists to make an examination of the accused.

The evidence is without conflict that Poulson attended elementary schools in the vicinity of Provo, Utah, where he advanced through the 8th grade, and was described as a below-average student. In 1955, at the approximate age of 16, he was committed to the Utah State Training School[1] at American Fork, Utah, after an attack upon his half-sister. The superintendent and medical director testified that Poulson was considered mentally deficient, but caused no trouble and was one of the most competent children at the school. He was discharged in 1958. At the time of the murder, he was married, living with his wife, and employed. All of the expert witnesses who testified as to Poulson's mental condition thought that he was retarded "to a mild degree." One psychologist testified that in his opinion Poulson was suffering from a mental illness related to feeblemindedness, to the extent that once he "launched on an impulse" he had no means of preventing the completion of the act.

At the trial, two of the appointed psychiatrists testified that their examination of Poulson disclosed no evidence of psychosis and that they were of the opinion that he knew right from wrong, understood the nature and seriousness of his acts, and could control his impulses and emotions. In submitting the case to the jury, the court's instructions defined insanity in language approved by the Supreme Court of Utah.[2]

At the hearing on the post-conviction proceedings in the state court, all the doctors who had been appointed by the court to examine Poulson were called as witnesses. It developed that one of the doctors, after making his examination, had forwarded his notes concerning that examination, together with his analysis, to the other two doctors, suggesting that such material might be helpful and time-saving to them. All the doctors testified that they were in substantial agreement as to the mental condition of the accused, and the two doctors who had received the notes and analysis of the first were not influenced by them in reaching their conclusions.

At the trial in the state court, Poulson was represented by appointed counsel. Following the conviction, his present counsel was designated to represent him on appeal, and he has continued to act as his attorney in the state court post-conviction action and in these proceedings. Throughout he has been effectively represented by able and conscientious attorneys.

The habeas corpus petition alleges, and it is argued here, that the trial which resulted in Poulson's conviction was so saturated with unfairness as to constitute a lack of due process as contemplated by the 14th Amendment to the Constitution of the United States. These errors, which are said to offend the canons of decency and fairness, are (1) failure of the court to instruct the jury that it could convict on a lesser offense included in the charge of murder in the first degree;[3] (2) failure to instruct the jury

1. The Utah State Training School is maintained by the State of Utah for retarded children.

2. After advising the jury that when the defense of insanity is raised in a criminal case, the burden is upon the prosecution to prove beyond a reasonable doubt the sanity of the accused, insanity was defined as follows:
"The term 'insane' as used in these instructions means such a perverted and deranged condition of a person's mental faculties as to render him either incapable of distinguishing between right and wrong, or incapable of knowing the nature of the act he is committing; and

where he is conscious of the nature of the act he is committing and able to distinguish between right and wrong and knows that the act is wrong, yet his will, that is, the governing power of his mind, has been so completely destroyed that his actions are not subject to it, but are beyond his control." See, State v. Kirkham, 7 Utah 2d 108, 319 P.2d 859.

3. In its instructions to the jury, the court stated: "Although there are two degrees of murder, the evidence in this case is such that either the defendant is innocent of the charge of murder, or he is guilty of murder in the first degree."

that defendant should be acquitted if he was suffering from a mental disease and the slaying was the product of such mental disease; (3) inflammatory argument of one of the prosecutors; and (4) failure of the doctors appointed by the court to reach independent conclusions as to the mental condition of the accused. The appellee Warden contends that the objections raised in the petition are only trial errors of the state court and are not such as to deprive the accused of his constitutional rights. We think the contention is well taken.

This court has frequently said that habeas corpus is available to review state court errors in criminal cases only when they relate to and deprive an accused of fundamental rights guaranteed by the Constitution. Latham v. Crouse, 10 Cir., 320 F.2d 120, cert. denied 375 U.S. 959, 84 S.Ct. 449, 11 L.Ed.2d 317. In Hickock v. Crouse, 10 Cir., 334 F.2d 95, 100, cert. denied 379 U.S. 982, 85 S.Ct. 689, 13 L.Ed.2d 572, reh. denied 380 U.S. 928, 85 S.Ct. 908, 13 L.Ed.2d 817, we said:

"While the power of a federal court in a habeas corpus proceeding is great indeed, the narrow limits of its jurisdiction within which that power may be exercised when reviewing a state court conviction cannot be too strongly emphasized. The function of the great writ in such instances ' * * * is to test by way of an original civil proceeding, independent of the normal channels of review of criminal judgments, the very gravest allegations. State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' Townsend v. Sain, 372 U.S. 293, 311–312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770. See, also, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837."

Under our system, the administration of criminal justice is generally committed to the several states. Constitutional provisions are restrictions only upon the manner in which the states may enforce their penal codes. Due process of law "is not to be turned into a destructive dogma against the States in the administration of their systems of criminal justice." Rochin v. People of California, 342 U.S. 165, 168, 72 S.Ct. 205, 208, 96 L.Ed. 183. In the enforcement of their criminal laws, states have comprehensive rights in fashioning their own rules. Knapp v. Schweitzer, 357 U.S. 371, 78 S.Ct. 1302, 2 L.Ed.2d 1393, reh. denied 358 U.S. 860, 79 S.Ct. 12, 3 L.Ed.2d 95.

Two of the contentions for reversal made here relate to the failure of the court to instruct the jury upon lesser offenses included in the charge of first degree murder, and an alleged erroneous instruction as to the defense of insanity. No objection was made to the trial court's failure to give an instruction on the lesser included offenses, and no request was made for such an instruction. As stated by the Supreme Court of Utah, "(I)t is apparent from the record that he [Poulson] did not desire them—choosing rather to submit the case to the jury on an 'all or nothing' basis." State v. Poulson, 381 P.2d 93, 94. The insanity instruction given by the court followed those formerly approved by the Supreme Court of Utah, and again approved upon appeal in this case. See, State v. Kirkham, 7 Utah 2d 108, 319 P.2d 859; State v. Green, 86 Utah 192, 40 P.2d 961; State v. Green, 78 Utah 580, 6 P.2d 177.[4] If we should assume, which we do not, that there were errors in failing to instruct the jury that it might convict the defendant of a lesser offense than first degree murder, and in failing properly to define insanity, such errors would not be reversible on habeas corpus. Maxwell v. Hudspeth, 10 Cir., 175 F.2d 318, cert. denied 338 U.S. 834, 70 S.Ct. 39, 94 L.Ed. 509.

---

4. The instruction given by the court was substantially the same as that approved by this court in Wion v. United States,

10 Cir., 325 F.2d 420, cert. denied 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309.

In his third contention, Poulson urges that the closing argument of one of the state prosecutors was so inflammatory as to deprive him of a fair trial. The argument referred to the prosecutor's personal feelings and to his acquaintance with the family of the murdered child. While such arguments should be avoided, it was not such as to constitute a violation of the due process clause of the 14th Amendment. We agree with the Supreme Court of Utah, which stated: "We have carefully examined this argument and, while finding it to be rather emotional and unnecessary, do not deem it to have prejudiced the jury in its deliberations." State v. Poulson, 381 P.2d 93, 95.

We find no merit in the argument that the failure of the court-appointed alienists to act independently violated Poulson's constitutional rights. Satisfactory disposition of this matter was made by the Supreme Court of Utah, where it was said:

"The record of the hearing shows that the opinion of both doctors as to the mental condition of the defendant was based on full, separate, and independent examinations of the defendant. We need not decide whether a Coram Vobis Petition would have been granted had defendant shown that communications between the alienists contributed to their opinions as to the mental condition of the defendant. Communication between alienists which does not contribute to the opinion of the alienists as to the mental condition of the defendant is not grounds for a Coram Vobis Petition." State v. Poulson, 397 P.2d 70, 71.

We understand counsel's concern about the execution of one who is below standard in mentality, and the court desires to express its appreciation for the untiring efforts of counsel to exhaust every legal means of assuring that the State of Utah does not put to death, even for a horrible crime, one who is not mentally responsible. The duty to determine the mental capacity, however, of the accused, was upon the state courts of Utah, and so long as the prosecution does not transgress the boundaries of constitutional protection, their action will be upheld. The alleged errors here have been held by the Supreme Court of Utah not to be reversible. We find nothing in the record, taken as a whole, which can be considered violative of fundamental rights of Poulson as guaranteed by the Constitution of the United States.

Affirmed.