**Ray Wayne PIERCE, Appellant,**

v.

**John W. TURNER, Warden, Utah State Prison, Appellee.**

**No. 9865.**

United States Court of Appeals
Tenth Circuit.

Oct. 30, 1968.

Delbert M. Draper, Jr., of Draper, Sandack & Saperstein, Salt Lake City, Utah, for appellant.

LeRoy S. Axland, Asst. Atty. Gen., (Phil L. Hansen, Atty. Gen., was with him on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

LEWIS, Circuit Judge.

Petitioner is a state prisoner presently incarcerated in the Utah State Prison after conviction for the crime of murder. The judgment of conviction was affirmed by the Utah Supreme Court, State v. Pierce, 17 Utah 2d 394, 412 P.2d 923, a subsequent petition for a writ of habeas corpus, treated as a petition for rehearing by the Utah court,

was summarily denied by that court and certiorari was denied in the proceedings by the United States Supreme Court. Pierce v. Turner, 386 U.S. 947, 87 S.Ct. 978, 17 L.Ed.2d 877. Petitioner, encouraged by a comment of Mr. Justice Douglas in that order denying certiorari,[1] then filed an application for a writ of habeas corpus in the federal district court for the District of Utah. After a full evidentiary hearing that probed to considerable depth into "the contemporary state of knowledge on the problems of insanity," that court denied relief. Pierce v. Turner, D.C., 276 F.Supp. 289. This appeal followed, petitioner succinctly stating the issues to be:

1. "Whether or not the state court trial which limited the jury's consideration of the defense of insanity to the M'Naghten tests deprived appellant herein of due process of law under the fifth and fourteenth amendments to the Constitution of the United States."

2. "Whether or not the state court's instruction to the jury as to the legal sufficiency of the defense of insanity by reason of appellant's 'voluntary intoxication' resulting from glue sniffing deprived appellant herein of due process of law under the fifth and fourteenth amendments to the Constitution of the United States."

Petitioner has at no time disputed the fact that he stabbed to death a teen-age companion, Kenny Vaught. His sole defense was that of insanity, temporary in nature and induced by the extensive inhalation of toluene, an organic solvent contained in some readily obtained tubes of glue. It is undisputed that the admitted homicide took place after both the petitioner and the deceased had sniffed glue containing toluene.

At the trial extensive testimony was elicited from expert witnesses as to the effect the use of toluene has upon its user. This testimony revealed that the use of toluene may produce hallucinations and delusions,[2] that the hallucinations and delusions are often accelerated when the lights are turned off, that partial amnesia is a common characteristic of its use and that a constant user of toluene, although not physically dependent upon toluene, is usually under a strong compulsion to inhale the substance when he is around others who are partaking in the activity. The testimony of the experts further revealed that a conflict of opinion exists as to whether a person under the influence of toluene can distinguish right from wrong.

Petitioner admitted that he had sniffed glue on a number of previous occasions and that he was aware that such indulgence could produce the varying sensations of what psychiatrists term induced psychosis. He further testified that on the night of the killing he and deceased were sniffing glue in petitioner's apartment, that deceased said that he had seen ghosts and requested petitioner to turn off the light so that he too might vision the ghosts,

1. "Denial of certiorari is proper in this case. I see no constitutional bar to a state court treating a petition for habeas corpus as a petition for rehearing where the habeas corpus petition raises the same questions as an earlier appeal. But federal habeas corpus is not so cramped, and the petitioner can, of course, petition a federal district court for a writ of habeas corpus. The underlying question is whether the *M'Naghten* test of legal insanity is a constitutionally permissible test of criminal liability in light of the contemporary state of knowledge on the problems of insanity. Should that test give way to the 128 years of experience in the fields of psychiatry and psychology since its formulation? Should it be replaced by the more sophisticated and realistic *Durham* test (Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862) or some other test more in keeping with due process?"

2. This is to be distinguished from the effects of alcohol. Except during withdrawal by a chronic alcoholic (delirium tremens) the use of alcohol does not produce these manifestations of a psychotic condition.

that petitioner in response to such a request turned off the light and that the next thing petitioner could remember was turning on the light and viewing deceased bleeding to death in a chair. Petitioner attempted to save deceased by giving oral resuscitation and when the effort failed sought help from the tenants in an adjoining apartment. In petitioner's apartment police found a blood-stained knife, empty glue containers and rags saturated with glue.

The state, although noting that the behavior of petitioner as revealed in his testimony could be, according to the experts, characteristic of one under the influence of toluene, relied upon the testimony of its own expert that even one under the influence of toluene could distinguish right from wrong and upon the fact that there was no direct evidence that petitioner himself was experiencing hallucinations at the time he killed deceased.[3] There was also evidence that petitioner had in his possession the wallet of deceased and the money contained therein ($25) and that petitioner in the past had indicated that he would kill "for enough money."

With this evidence as a background the state trial judge twice instructed the jury as to insanity, first during the course of the trial as the issue of petitioner's mental condition developed and as an aid to the jury's understanding of the evidence as it was being presented, and then at submission of the case to the jury. The court's instructions on the legal test of insanity as a defense against responsibility for acts of a criminal nature were admittedly full and in complete compliance with Utah law. The formal instruction was as follows:

7a. "You are instructed that if you have a reasonable doubt as to whether or not the defendant at the time of the alleged crime:

1. Knew the nature of his act in stabbing the deceased; or

2. That when he stabbed him he did not know it was wrong in the sense that such stabbing was condemned by morals or law; or

3. That he was unable by reason of a mental disease to control his actions or impulses which killed the deceased:

Then In either or all of these situations, the defendant would not be legally responsible for the death of the deceased, and you must find him not guilty."

The cited instruction can loosely be termed the M'Naghten test supplemented by the "irresistible impulse" principle.

█ The first appellate issue presented by petitioner is an able but generalized attack upon the substance of the state instruction as a constitutional test of criminal responsibility. The basic premise of such argument is that the rule is outdated because unacceptable in the field of psychiatry and modern concepts of criminal responsibility when viewed through the constantly progressing knowledge of the medical profession in its study of mental illness, its causes and effects. This court, and many others, have considered this disturbing problem. In Wion v. United States, 10 Cir., 325 F.2d 420, 425, Chief Judge Murrah, speaking for a unanimous court sitting en banc, reflected this court's basic rejection of petitioner's argument, suggested the proper correlation between psychiatry and law,[4] but recog-

---

3. Petitioner did not claim that he saw ghosts but only that he could not remember what occurred after he turned off the light.

4. "This leads us to suggest that the emphasis on psychiatry at the point of criminal responsibility is misplaced. In most cases where irresponsibility is in issue, the commission of the prohibited act is not disputed, and the question whether the accused is to be excused as mentally irresponsible, or is to be held accountable, does not solve the problem. In either case, the law must in some way protect the community by rehabilitation or isolation. This involves the sentencing function, which is the ultimate responsibility of the Court, as an instrument of the social order. It is at this point that

nized that "it is always appropriate to re-examine and reappraise the rule" of criminal responsibility. In *Wion* our review was contained within this court's supervisory power over the administration of justice within the federal system. In the case at bar we are concerned only with a constitutional issue. But such issue was inherent in *Wion* and we find no constitutional overtone present in the subject state instruction which was not present in the actual instruction given by the federal trial court in *Wion*.[5] We find no constitutional impairment in the state instruction and have, although petitioner's present contention was apparently not then urged, earlier accepted a comparable Utah court instruction as proper. See Poulson v. Turner, 10 Cir., 359 F.2d 588, cert. den., 385 U.S. 905, 87 S.Ct. 219, 17 L.Ed.2d 136.

The second appellate issue arising under the facts of this case brings into sharp focus a complication, here urged as constitutional in nature, involving a deviation from the traditional version of insanity, legal or medical, caused by the voluntary use of substances or drugs resulting in hallucinations and having an undisputed effect upon the user's volitional capacities in varying ways and degrees. In the case at bar the state trial judge instructed upon this subject as follows:

> 7b. "Under the laws of the State of Utah no act committed by a person while in a state of voluntary intoxication induced by the use of toluene is less criminal by reason of his having been in such condition, except that the jury may take into considera-

tion the evidence of intoxication on the part of the accused in connection with determining the intent with which any particular act may have been committed.

Being in a state of voluntary intoxication is no excuse for the commission of a crime where it merely makes a person more excited or reckless, so that he does things he might not otherwise have done, and it may even make the commission of an offense more grave than it otherwise would be, but if the defendant was so intoxicated at the time of the alleged offense that he did not know what he was doing, or was so intoxicated that he was incapable of forming an intent to commit the offense charged, then he would not be guilty of the offense."

The instruction is a correct reflection of Utah statutory law as applicable to criminal responsibility, section 76–1–22, Utah Code Ann.1953, which in turn codifies a common-law principle of long standing. It is true, as petitioner asserts, that the instruction, historically and commonly, was concerned with voluntary intoxication from alcohol but we see no constitutional impairment to its application to the facts of this case. This aspect of the case—the correlation of the concept of voluntary intoxication to the Utah test of insanity under the case evidence pertaining to toluene—is clearly and comprehensively set out in Part II of the district court's opinion and we unhesitatingly adopt Judge Christensen's views and legal reasoning as our own. Pierce v. Turner, 276 F.Supp. 289, 296–300. We anticipate, of course, that

the behavorial [sic] scientists can be of most help to the Court, and to the offender as well. And, we will all concede that what is best for the offender is best for society, for in most cases, the offender is eventually returned to society, either fit or unfit." *Wion*, supra at 428.

5. The trial court had there defined mental incompetency as " * * * such a perverted and deranged condition of the

mental and moral faculties as to render a person incapable of distinguishing between right and wrong, or unconscious at the time of the nature of his act, or though conscious of his conduct and able to distinguish between right and wrong, and knowing that the act is wrong, yet his will—by which is meant the governing power of his mind—has been involuntarily so completely destroyed that his actions are not subject to it but are beyond his control." *Wion*, supra at 424.

the demands of due process may require adjustment and refinement in traditional and "stock" instructions on the subject of criminal responsibility in view of the frightening effects of the hallucinatory drugs. But this "adjustment has always been thought to be the province of the States," Powell v. State of Texas, 392 U.S. 514, 536, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254, and "[i]t is simply not yet the time to write into the Constitution formulas cast in terms whose meaning, let alone relevance, are not yet clear either to doctors or to lawyers." Id. at 537, 88 S.Ct. at 2156.

Affirmed.