475 P.2d 57

**The STATE of Utah, Plaintiff and
Respondent,**

**v.**

**Judy Carol LEGGROAN, Defendant and
Appellant.**

**No. 12048.**

Supreme Court of Utah.

Sept. 30, 1970.

Crockett, C. J., filed concurring opin-
ion.

John D. O'Connell, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Asst. Atty. Gen., Salt Lake City, for respondent.

HENRIOD, Justice:

Appeal from a second-degree murder conviction, after a jury trial where defendant had been charged with murder. Affirmed.

Defendant shot her husband under circumstances reflecting a violent quarrel punctuated by unmentionable and unseemly language reflecting on the animal kingdom genealogy of the disputants. Some medical, psychiatric and psychologist men testified somewhat differently, as is wont to be the case many times, but there was a pattern of unanimity to the effect that the violence was the result of an unusual and uncontrollable urgence to inflict bodily harm or worse, the one upon the other.

Defendant urges that the instruction that told the jury the difference between murder and voluntary manslaughter was in error, and that had the instruction been correctly stated, the facts were such that "a conviction of the lesser offense of voluntary manslaughter was a strong possibility in this case." Counsel's contention is that the following instruction was erroneous because of the words set forth in italics:

The phrase "in the heat of passion," as used in these instructions, means in a state of mind known as anger, rage, resentment, or any other mental or emotional disturbance of sufficient intensity as to render the mind incapable of cool reflection, and productive of such an emotional or mental state as to *irresistibly compel an ordinary, reasonable person to commit the act charged.* * * To reduce a homicide from murder to voluntary manslaughter on the ground that it was committed "in the heat of passion," it must appear that such heat of passion was induced by an adequate provocation. And by "adequate provocation" is meant such provocation as in the ordinary experience of mankind may be reasonably considered sufficient to temporarily *destroy* an ordinary person's reason and judgment, to such an extent as to be considered in view of all the circumstances an irresistible passion.

We believe and hold that the instruction as given, taken with the rest, was not in error or prejudicial under the facts of this particular case. An instruction that with little substantial difference has weathered the storm of scrutiny of some of the most outstanding skippers of criminal law since way back yonder in 1888, when in People v. Calton,[1] a weatherbeaten instruction, yet unreversed and seaworthy still, said:

---

1. 5 Utah 451, 16 P. 902 (1888).

\* \* \* To reduce homicide to the degree of manslaughter on the ground solely that it was committed in the heat of passion, the provocation must have been considerable, in other words, such as was calculated to give rise to *irresistible* passion in the mind of a reasonable person.

This instruction was approved in Hart v. United States,[2] which cited the Calton case, and stated that "The rule is that provocation, in order to be sufficient, must be such as is calculated to produce hot blood or *irresistible* passion in the mind of a reasonable man."

A comparison of the Calton instruction with the alleged objectionable instruction in this case is commended to the reader with the suggestion that any difference in sense and meaning scarcely would be discernible in the minds of a lay venireman, albeit noticeable in the mind of a kudoed psychiatrist or a grammarian bent on hypertechnical articulation.

It could be that counsel's objection to the instruction given, well and satisfactorily might be met by changing "irresistibly compel" to "provoke," and "destroy" to "alter." This author would make book that the switch would not rock the rock-ribbed jury system one whit from Maine to California.

We say all this to answer counsel's point on appeal as to the wording of the instruction, which, had it been the only point, would have impelled us and does impel us to affirm the trial court. But there are other reasons for arriving at the same conclusion.

■ Counsel for defendant at the trial (not the one representing defendant on this appeal), did not take exception to the instruction which now is assailed for the first time on appeal. He says this was unnecessary and that the court should have noted the error sua sponte. He relies on State v. Cobo,[3] in support of his contention. Our answer to such urgence is that in the instant case, we believe and hold that there was no such "*palpable* error made to appear on the record" as was extant in the Cobo case. We expressed our opinion along this line in State v. Mitchell.[4] Furthermore, counsel's contention appears to be without serious conviction in light of our holding in State v. Gallegos,[5] where we said that "It is generally held, under ordinary factual situations, that where a jury finds a defendant guilty of a greater offense, the giving of an erroneous instruction on a lesser offense is not prejudicial."

■ Defendant also appeals on the ground she was denied a fair trial by a

2.  76 U.S.App.D.C. 193, 130 F.2d 456 (1942).

3.  90 Utah 89, 60 P.2d 952 (1952).
4.  3 Utah 2d 70, 278 P.2d 618 (1955).
5.  16 Utah 2d 102, 396 P.2d 414 (1964).

jury, because the selection of the jury unfairly excluded a substantial segment of the community of which she was a part. Defendant was a colored woman.

The jury was selected from the assessment rolls.

There is no evidence whatever that the jury was selected by anyone in order deliberately to exclude anyone. The only suggestion of disproportionate selection amounting to prejudice is the happenstance that there were only ten women on a prospective panel of 50 veniremen chosen from the assessment rolls, which certainly would not warrant reversal; and such suggestion hardly could be implied from the fact that defendant was black, because this court could almost take note of the fact that the black citizens in Salt Lake County would represent no more than two per cent of the population, give or take a point,—so few that it would not be unusual that one or more would not be selected by lot. The other conclusions drawn and stated by counsel are not supported by the record, but simply are gratuities. The authorities cited by defendant are so different factually as to have no application here. We believe and hold defendant's second point to be without merit. (Emphasis added.)

CALLISTER, TUCKETT and ELLETT, JJ., concur.

1. Jury instruction approved in State v. Poulson, 14 Utah 2d 213, 381 P.2d 93

CROCKETT, Chief Justice (concurring)

I concur in affirming the conviction. However, I think it appropriate to point out what I regard as a distinction between the temporary "heat of passion" involved in reducing an intentional homicide to manslaughter and the "irresistible passion," or "irresistible impulse," which is a criterion to be applied in judging the claim of insanity of one accused of crime.

The latter has been stated by this court to include a situation where a person, " * * * is conscious of the nature of the act he is committing and able to distinguish between right and wrong and knows that the act is wrong yet his will, that is, the governing power of his mind, has been *so completely destroyed that his actions* are not subject to it, but *are beyond his control.*" [1] Under that definition, if the accused's reason and judgment are destroyed by mental disease to the point where he is "irresistibly compelled" in that his actions are not subject to his will, he would be considered to have been insane at the time the act was committed and therefore not held responsible.

It is true that the language of some cases indicates that the passion requisite to reduce a homicide to manslaughter should completely overcome the will, including the cases referred to in the main

(1963); see also State v. Kirkham, 7 Utah 2d 108, 319 P.2d 859 (1958).

opinion. But it is submitted that the better view is that in order to constitute manslaughter it is not necessary that the will be completely overcome nor that the reason be completely destroyed. The proposition is well stated in Maher v. People: "It will not do to hold that reason should be entirely dethroned or overpowered by passion so as to destroy intelligent volition. Such a degree of mental disturbance would be equivalent to utter insanity, * * *." [2] In contrast to this, what is required in order to reduce a homicide to manslaughter is that there be heat of passion, upon some adequate provocation, such that the accused's ability to reason and to control his actions are temporarily so disturbed or obscured as to raise a reasonable doubt that he is incapable of acting with the intent and/or malice required for a conviction of murder. [3]

2. 10 Mich. 212. See also: People v. Calton, 5 Utah 451, appears in 16 P. 902 as Territory v. Catton [sic] (1888), reversed on other grounds Calton v. Utah, 130 U.S. 83, 9 S.Ct. 435, 32 L.Ed. 870 (1888); State v. Gardner, 219 S.C. 97, 64 S.E.2d 130 (1951).
 See Ryan v. State, 115 Wis. 488, 92 N.W. 271 (1902); Olds v. State, 44 Fla. 452, 33 So. 296 (1902); Johnson v. State, 129 Wis. 146, 108 N.W. 55 (1906); People v. Poole, 159 Mich. 350, 123 N.W. 1093 (1909); State v. Davis, 50 S.C. 405, 27 S.E. 905 (1897); Maher v. People, 10 Mich. 212 (1862); see also statements of the rule in varying forms, 40 C.J.S. Homicide p. 903, 40 Am.Jur.2d p. 353.