Judy LEGGROAN, Petitioner-Appellee,

v.

Samuel W. SMITH, Warden, Utah State Prison, Respondent-Appellant.

No. 73–1854.

United States Court of Appeals, Tenth Circuit.

June 11, 1974.

M. Reid Russell, Asst. Atty. Gen. (Vernon B. Romney, Atty. Gen., on the brief), Salt Lake City, Utah, for respondent-appellant.

D. Jay Gamble, Salt Lake City, Utah, for petitioner-appellee.

Before PHILLIPS, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The State of Utah appeals from an order of the United States District Court for the District of Utah granting Judy Leggroan's petition for a writ of habeas corpus.

Appellee was convicted in the District Court of Salt Lake County, Utah, in 1969, of second degree murder and was sentenced to a term of ten years to life imprisonment. Prior to selecting the jury she challenged the entire panel on the grounds it was selected from tax assessment rolls, thereby excluding nonproperty owners and prejudicially reducing the number of women, young people, poor people and members of minority races. This challenge, as was a subsequent challenge raised at the end of the trial, was denied.

The conviction was affirmed on appeal, the Utah Supreme Court finding that the jury selection process did not evidence any scheme or practice of systematic exclusion violative of petitioner's constitutional rights. State v. Leggroan, 25 Utah 2d 32, 475 P.2d 57 (1970).

Thereafter, appellee petitioned the United States District Court for a writ of habeas corpus. The petition was denied because she had not exhausted all available state remedies. She then petitioned the District Court of Salt Lake County, Utah, for a writ of habeas corpus and, when this was denied, appealed the decision to the Utah Supreme Court. Finding that the identical issue already had been raised and decided on direct appeal, that court affirmed the decision. Leggroan v. Turner, 27 Utah 2d 403, 497 P.2d 17 (1972).

Having exhausted her state remedies, appellee once again petitioned the United States District Court for a writ of habeas corpus. She alleged that the exclusion of nonproperty owners from jury selection violated the Sixth Amendment to the United States Constitution, and the due process and equal protection clauses of the Fourteenth Amendment. Following a hearing, her petition was granted.

Appellee first contends Utah's jury selection statute, U.C.A. § 78–46–17 (1953), itself established a prima facie case of purposeful and systematic discrimination because it excludes from jury service all persons who do not own real property. The statute, which has since been amended, provided that prospective jurors were to be chosen from the names of legal voters appearing on the county assessment rolls.[1]

An examination of supporting statutes, however, reveals that the assessment rolls are not limited to real property. Section 59–8–1 provides for the recording of *all* property on the assess-

---

1. 78–46–17. Selection of names of persons. —It shall be the duty of the jury commissioners before the 15th day of December after their appointment to select from the names of the legal voters on the assessment roll of the county for the current year a written list of names from which the grand and trial jurors shall be drawn to serve in the district court of such county during the succeeding calendar year. In making the jury selection they shall choose only those who are not exempt from jury service, who are in possession of their faculties, who are not infirm or decrepit, who are well informed and free from legal exceptions, and, as far as is practicable, who were not returned on the jury list of the next preceding year. No person shall be selected as a juror who is known to them to be interested in or has a cause pending which may be tried by a jury to be drawn from the persons so selected, or who, either personally or otherwise, has solicited his selection as such.

Pursuant to the 1971 amendment, jurors are now chosen only from the voter registration lists.

ment roll,[2] and § 59–3–1 further defines "property" to include personal property, the result being that prospective jurors were to be chosen from names appearing on both the real property and personal property lists. State v. Johnson, 25 Utah 2d 46, 475 P.2d 543 (1970); State v. Beasley, 22 Utah 2d 423, 454 P.2d 880 (1969). Such a selection method does not amount to a *per se* unconstitutional exclusion. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Clark v. Ellenbogen, 319 F.Supp. 623 (W.D.Pa.1970), aff'd mem., 402 U.S. 935, 91 S.Ct. 1615, 29 L.Ed.2d 104 (1971).

■ In cases where the United States Supreme Court has questioned jury selection procedures based on such assessment rolls, it has been because of the manner in which they were used, and not because of the assessment rolls themselves.[3] Therefore we find the statute itself constitutionally valid.

■ Appellee nevertheless attacks the jury selection system used by the jury commissioners in Salt Lake County as unconstitutional. Such a claim necessarily requires a showing that a recognizable, identifiable class of persons, otherwise entitled to be jury members, has been purposefully and systematically excluded from jury service. Brown v. Allen, *supra.* The burden of proof rests upon appellee. Once a prima facie case is established, however, that burden shifts to the state to rebut the facts presented and to offer a rational basis for the excluded classification. Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967).

The record discloses that prior to 1960, Salt Lake County's jury selection procedure complied with U.C.A. § 78–46–17. Names of prospective jurors were obtained through use of voters' registration lists and automobile ownership (personal property) rolls. Beginning in 1960, however, real property assessment rolls were used in place of the automobile ownership rolls. Jury commissioners testified that persons were not considered for jury service unless they were registered voters whose names appeared on the real property assessment rolls. This procedure was utilized until late in 1969. Thereafter, names of prospective jurors were chosen only from voters' registration lists.

■■ Appellant contends this is not a sufficient showing because appellee has not established a purposeful discrimination against, or a systematic exclusion of, an identifiable group of persons. Such an argument is without merit. Appellee has shown that for approximately nine years all non-freeholders, an identifiable segment of the community, have been excluded from consideration for jury service. Because the Fourteenth Amendment's equal protection clause reaches all exclusions which single out any class of persons for different treatment not based on a reasonable classification, Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961); Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954), the exclusion of an entire class from jury service establishes a prima facie case of systematic and purposeful exclusion which, if unsuccessfully rebutted, must prevail. *See* Annot.; Jury Selection—Group Discrimination, 33 L.Ed.2d 783 (1973).

The question, then, is whether the ownership of real property is a relevant qualification justifying such an exclusion. In this regard, we are not unaware of Gibson v. Mississippi, 162 U.S.

---

2. U.C.A. § 59–8–1 provides in part: "The county auditor . . . shall proceed to add the valuations, and enter the total valuation of each kind of property, and the total evaluation of all property, on the assessment book."

3. *See, e. g.,* Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967), assessment rolls listed taxpayers separately by race; Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed 599 (1967), assessment rolls designated blacks by placing a "(c)" next to their names; Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L. Ed.2d 77 (1964), assessment rolls listed taxpayers separately by race.

565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896), wherein the Supreme Court, in dicta, held that states may confine the selection of jurors to freeholders. Subsequent decisions, however, have impliedly rejected this qualification. In Carter v. Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), it is stated: "The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character." The freeholder qualification, however, is conspicuously absent.[4]

Moreover, a close analogy exists in Supreme Court cases outlawing limiting public officers to owners of real property.[5] There, as here, we are unable to discern any interest the distinction can rationally serve.

The only justification offered by appellant is that the qualification increased the likelihood that persons available would actually be present for jury duty. We do not believe this is a sufficient justification to outweigh the interests of those persons who are disadvantaged by the classification. Many poor people, blacks, women and young people, who cannot afford the high cost of a home, as well as persons who simply prefer apartment living, all pay real property taxes, either directly or indirectly, through rent payments.

■ Persons eligible for jury service are to be found in every stratum of society. Thiel v. Southern Pac. Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946). Yet the exclusion of a large segment of the community, as here, removes from the jury panel desirable qualities of human nature and experience. We find that no rational basis exists for such a discriminatory exclusion and that the jury selection method used was constitutionally improper.

■ The remaining issue to be decided, of course, is the effect this decision is to have. Initially, we note that the reliability of appellee's verdict has not been questioned; nor has our decision been concerned with her actual guilt or innocence. Although a constitutionally improper method of jury selection mandates a reversal of her conviction, appellee need not go free if in fact guilty, and appellant may try her again.

■■ Appellant argues the decision should not be retroactively applied because of the potential adverse effect upon the administration of justice. Our decision is so limited in scope, however, that its effects will be minimal. It applies only to those persons convicted in Salt Lake County during the period of time the improper jury selection system was used, and is further limited to persons who timely objected to their jury panel, because a defendant, by accepting a jury, waives his right to object to the panel. See Francis v. Southern Pac. Co., 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798 (1948); Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1942); 47 Am.Jur.2d Jury § 181 (1969).

The order of the district court is affirmed.

---

4. *See* Clark v. Ellenbogen, 319 F.Supp. 623 (W.D.Pa.1970), aff'd mem., 402 U.S. 935, 91 S.Ct. 1615, 29 L.Ed.2d 104. "[I]f the . . . statute limits jurors to taxpayers assessed as owners of real property, the statute must be deemed unconstitutional."

5. *See, e. g.,* Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). *See also* City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), holding persons who do not own real property may not be excluded from voting on bond issues.